MILLER VS. FRALEY ET AL.

Where lands are sold under execution and purchased by a party at the request and with the means of the defendant in the execution, upon an agreement to hold them for his use and benefit, though by the sale, purchase and conveyance of the sheriff, the purchaser obtains the legal title to the lands, his title is fraudulent and void as against the creditors of the defendant, and, in equity, he holds the lands as trustee for their benefit; and if he sell and convey them to another, the title of his vendee is equally worthless and void, if he purchased with notice of the fraud:—

And where the bill to set aside such fraudulent title, states the facts constituting the fraud, but does not expressly allege that the defendants had notice of the fraud when they purchased the land, the answer of the defendants, claiming protection as *bona fide* purchasers, must deny notice of the fraud positively, and not evasively—must deny fully, and in the most precise terms, every circumstance charged in the bill from which notice could be inferred:—

And where a general replication to the answer in such case is filed, it will not cure the defect of a failure, on the part of the defendant, to aver want of notice of such fraud down to the delivery of the deed to him by his vendor; and, without such averment, the party must fail to sustain his title, regardless of the sufficiency of his proof that he was an innocent purchaser: As held in *Byers et al. vs. McDonald et al.* (7 *Eng.* 220), which, after a careful examination of the authorities upon which it rests, and consideration of the arguments urged against its correctness, the Court conclude not to disturb.

The lands of Kinman were sold under execution, and bought by Fraley, with the means and for the benefit of Kinman; they were then sold under a junior judgment against him, and purchased by complainant; Kinman afterwards sold the lands to M. G. & Co., and Fraley executed to them a deed; upon a bill, by complainant, to set aside the deeds under which M. G. & Co. claimed the land, and vest the title in him, the answer stated that "respondents claim the full benefit of purchasers, etc., in good faith, etc., without notice of any fraud:" *Held*, That this is no such positive denial of notice of the fraud at the time they purchased the land, etc., as is required by the well established rules of pleading in such case.

If an agent or attorney purchase a fraudulent title, with notice of the fraud, it is notice to the principal.

If a defective plea be replied to, and the matter alleged in the plea be proven upon the hearing, no matter how defective a defence it may be, the defendant is entitled to a decree, etc. (*Peay, Rec'r vs. Duncan et al.*, 20 *Ark.*); but this rule does not apply to a defective defence set up by answer; which is stated at the peril of the defendant, and if insufficient, he cannot make a better defence by proof upon the hearing than he has made in his answer.

The Statute (*Dig., chap.* 68, *sec.* 54) authorizes, upon the consent of the defendant, the sale of several parcels of land together at an execution sale; but whether such consent would make the sale valid where the lands were sacrificed to the injury of creditors, need not be decided in this case, there being no fraud attributed to the complainant, the purchaser at such sale.

Mere inadequacy of price, in the absence of fraud, does not vitiate a judicial sale.

*Appeal from Independence Circuit Court in Chancery.*

Hon. WILLIAM R. CAIN, Special Judge.

ROSE, for the appellant.

So far as the subject matter of this suit is concerned, Greenwood & Co. must certainly fail in their defence, because it is not well pleaded. The requisite allegations of a plea of purchase for a valuable consideration, without notice, may be seen by reference to 2 *Dan. Ch. Pl. & Pr.* 775, 776, 778; 3 *Sugden on Ven.* (6*lh Am. Ed., side page*) 490. These authorities are fully sustained by this Court, in the case of *Byers & Fowler vs. McDonald et al.*, 12 *Ark.* 286. All these authorities are emphatic, that the defendant, in his plea or answer, must aver that the person who conveyed was *seized and in possession*. The defendants, Greenwood & Co., no where allege that Fraley was

ever in possession, nor do they mention the possession at all. Advantage may be taken of this at any time, because such defence, though, by our practice, allowed to be inserted in an answer, is in the nature of a plea, and complainant need not except, but may take advantage of it on the hearing. See the case above referred to, 12 *Ark.* 286.

The answer is not drawn in such a manner as to make it available in any respect whatever, because it does not deny notice of complainant's title. The answer denies that Greenwood & Co., or their agents, knew any thing of Miller's having a claim to this land, when they bought from Fraley, and this is all that it does deny, and this is not sufficient, for, so far as the merits of this controversy are concerned, it is utterly immaterial whether Greenwood & Co. knew that there was any such man as the complainant in existence or not. The complainant is entitled to all the rights and all the relief that Parks was entitled to upon his judgment, for as Chancellor Kent says, " He stands in the creditor's place, and is armed with his rights." *Hildreth vs. Sands,* 2 *J. C. R.* 50. Same case on appeal, 14 *J. R.* 497, 498. Mr. Daniel in his work on *Chancery Pleading and Practice,* p. 777, 2d *vol.,* in speaking of the requisites of a plea such as is set up in this answer, says, " And the notice so denied must be notice of the existence of the plaintiff's title, and not merely notice of the existence of a person to claim under that title." The same language is held in 2 *Sug. Vend. Ch.* 24, *paragraph* 9, *page* 493.

The sale from the sheriff to Fraley, was entirely void, as against the statute of frauds. All the money which was paid for the land was Kinman's, and this is clear from the answer of Fraley, and from the depositions of Fraley, Bates and Byers. Indeed, the proof on this point is conclusive. The fact that the fraud was perpetrated under color of a sheriff's sale, and by prostituting the judicial process of the country, only makes the case more aggravating. *Stephen's adm'r. vs. Bardett,* 7 *Dana.* 259, 260.

The defendants do not deny, in their answer, the knowledge

of the fraud between Fraley and Kinman, but they say that the "legal title appeared to be in Fraley." That they knew of the fraud is not only evident from the fact that they do not deny it, but also, from all the evidence. They were willing to attempt to make the fraud of Fraley and Kinman successful, and become parties to that very fraud, by deriving their title from so muddy a source, and now they claim to be *innocent* purchasers, when, in order to make such a defence good, it must be made to appear that they purchased in good faith, *bona fide.* 2 *Dan. Ch. Pr.* 776, 779, *note* 1; *Yoder vs. Standerford, et al.* 7 *Monroe* 486 *to* 490; 3 *Sug. on Vend. Ch.* 24, *paragraph* 8, *p.* 491. *Byers & McDonald vs. Fowler et al.*, 12 *Ark.*, *p* 286.

If the price paid by complainant at the sheriff's sale be inadequate, (and there is no proof as to the value of the lands,) his rights are none the less for that. *Hildreth vs. Sands*, 2 *J. C. R., p.* 50. This doctrine is laid down in its fullest extent in *Hardy vs. Heard et at.*, 15 *Ark.* 188, 189.

The selling the land under the second execution, was entirely in accordance with the law. *Dig. p.* 628, *sec.* 6.

There was no irregularity in selling all the land together under the Parks execution, since the defendant, in the execution, consented to it, [*Dig. p.* 502, *sec.* 49,] and that the defendant did consent is shown by the sheriff's return, and if there had been any irregularity, it could not affect the complainant's rights. *Ringgold vs. Patterson*, 15 *Ark.* 216, 217. *Newton vs. State Bank*, 14 *Ark.* 15. *Byers & McDonald vs. Fowler*, 12 *Ark.* 275. 1 *Mon.* 95. *Colman vs. Traub, etc., ibid* 518. *Sanders' heirs vs. Norton*, 4 *Mon.* 565. *Webber & Stith, vs. Cox*, 6 *Mon.*

FAIRCHILD, for the appellees.

As a defence to this suit, Greenwood & Co. claimed to be purchasers in good faith, for a valuable consideration, without notice of fraud, or of the plaintiff's title. And, whether the allegations of the answer are made well enough to found such defence upon, is the first question.

The office of an answer to a bill in Chancery, is two-fold: to make the discovery required in the bill; and to allege facts to defeat the relief prayed for in the bill. *Story Eq. Pl. S.* 850; 2 *Dan. Ch. Pr.* 239.

The defence under consideration ordinarily falls within the second part of an answer, as above noted. Plaintiffs, commonly, are careful not to broach the subject of a *bona fide* purchase, and defendants that rely upon it, have to set it up as new matter. This defence is often, in the English practice is generally offered by plea, unless there be accessory facts, that make an answer the better medium of presenting the whole case to the Court. *Mitf. Ch. Pl.* 364, 365.

And it is proper here to inquire, what are the consequences to the plaintiff, if he fails to object to the sufficiency of the plea, and enters his replication thereto.

When a plea is replied to, the only question is upon its truth; its sufficiency as a pleading is admitted, and if found to be true, the bill, or so much of it as the plea relates to will be dismissed. *Mitf. Ch. Pl.* 353, 354; *Story Eq. Pl. S.* 694; *Farrington vs. Chute,* 1 *Vern.* 72 *per Keck arguendo; Hughes vs. Blake,* 6 *Whea.* 472, 5 *Cond. Rep.* 140; *Rhode Island vs. Massachusetts,* 14 *Pct.* 259; 1 *Hoff. Ch. Pr.* 222.

A replication to a plea is a full admission that the plea if true, is good in form and in substance; and the effect of a plea replied to and proven, though it be bad in form and substance, is to defeat the bill. *Mitf. Ch. Pl.* 355; *Mann vs. Fairchild* 5 *Barb.* 110.

A material part of the defence of *bona fide* purchaser, is the want of notice; but a plea of this kind that did not deny notice, being replied to, yet notwithstanding the plaintiff proved notice, the master of the Rolls held the plea as proven, to work a dismissal of the bill. *Harris vs. Ingledew,* 3 *P. W.* 94, 95.

It must follow as a necessary consequence, that if a fact set up by plea becomes a good defence, is admitted so to be by a replication to the plea, that a replication to an answer covers any defect in the statement of a defence made by answer.

And such is the law. An answer when replied to is acknowledged to be valid as a defence, its defects as a pleading cannot be urged against it. *Story Eq. s.* 877; *Cooper Eq. Pl.* 328, 320 from *Lube Eq. Pl.*; 3 note *Lube Eq. Pl.* 112; *Hughes vs. Blake,* 5 *Cond. Rep.* 140, from 6 *Whea.* 453, which was a case of replication to a plea and answer. 2 *Dan. Ch. Pr* 308; *McKim vs. White, Hall & Co.,* 2 *Md. Ch. Dec's. from* 13 *United States Dig.* 262, *p.* 692; *Perkins vs. Hays;* 4 *Cook,* 167, *from* 2 *Wheel. Am. ch. Dig.* 298, *p.* 2.

And the law is the same, not only as to that part of the answer which opposes the bill by direct response to its charges and allegations, but also to that part, which seeks to defeat the bill, by setting up new matter in avoidance thereof.

If an answer is not replied to and the case is heard on bill and answer, the whole answer is taken as true, that which contains new matter, as well as that which is responsive to the bill. So, if replication be put in, the whole answer is denied; it all stands for proof; so far as responsive to the bill, the answer proves itself, because the plaintiff has made the defendant a witness as to what is in the bill; the new matter has to be proven by independent testimony, for the defendant puts that in as a party, not as a witness; voluntarily and for his own benefit, and not upon co-ercion of the plaintiff. Still it is pleading put at issue and always, in all courts, the question in such case is upon the truth, not upon the goodness of the pleading.

But a contrary position is taken for the appellant, and *Byers & McDonald vs. Fowler,* 7 *Eng.* 288, is its authority.

I submit with respect, but with entire confidence, that the reasoning and authority heretofore adduced to make the decision against McDonald to be manifestly erroneous, unless there be higher or more authority, and better reasoning to sustain that decision.

If *Byers & McDonald vs. Fowler* be law a defendant in Chancery cannot have his mispleading waived by replication, while at law this rule is without exception.

Courts of Chancery do not require strictness of pleading, as

do courts of law; their object is to dispense equity, if sufficient can be found in the pleadings to show what is concluded to be averred and denied; not to deny it on matters of form, least of all, if formal requisites have been waived.   14 *Pet.* 257; 3 *J. J. Marsh.* 190; 5 *Mon.* 475; *Hempstead's Rep.* 719; 2 *Const.* 277; 1 *How.* (*U. S.*) *Rep.* 151.

If new matter be introduced in an answer, which, if true, is not a defence to the bill, the plaintiff can set the case down on bill and answer, which is equivalent to demurring to the answer. *Burge vs. Burns*, 1 *Morris* 287, *from* 8 *U. S. Dig.* 143, *p.* 552.

Or he might, perhaps, except if the matter in avoidance be imperfectly pleaded.   1 *Hoff. Ch. Pr.* 272, *note* (1) 273 *and note* (1).

Or, about which there is no doubt, he can amend his bill and require such further answer upon the subject as shall be clearly sufficient.

And this is the mode adopted by plaintiffs when they wish to introduce the new matter of the answer into their own pleading, or wish to avoid its effect.   This course as to the new matter of defence in an answer, may call it in question, as a demurrer does a bill, as the setting down a plea for argument questions its validity, as exceptions to an answer show its insufficiency.

But a replication puts the whole answer, that which is in avoidance of, as well as that which is responsive to the bill, at issue.   1 *Dan. Ch. Pr.* 513; 2 *do.* 386, 387; 1 *Hoff. Ch, Pr.* 43; *Alwood vs.* ——, 4 *Russ.* 353.

There is, then, no necessity for holding that a plaintiff, after taking issue to an answer, may question its sufficiency, and reason and law deny the proposition.

The answer is said to be insufficient to uphold proof of a *bona fide* purchase, because it does not deny notice of Miller's title.

Let it be remembered that the deed from Fraley to Greenwood & Co., was made upon the 20th of January, 1855, that the sheriff's deed to Miller was not made till the 28th of March,

1855, and was not filed for record till the 16th of May, 1855. Obviously, then, Greenwood & Co., and their attorney, could not know of any *title* that Miller had to the land. The answer does deny, emphatically, any knowledge, or information, or suspicion that Miller had any *claim* on the land, till after the deed to them had been made to Greenwood & Co., and full payment had been made. And it negatives any notice of fraud, of adverse claim, any knowledge that the lands had been sold to any body but to Fraley, and information of Miller's claim or title, or of its derivation.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

BILL filed by Wm. R. Miller, 15th July, 1855, in the Independence Circuit Court, against David S. Fraley, Lewis W. Kinman, and the firm of Moses Greenwood & Co., composed of Greenwood and Thomas E. Adams.

The case made by the bill is, in substance, as follows:

On the 18th March, 1854, *Goff* obtained a judgment in the Independence Circuit Court, against Lewis W. Kinman; upon which an execution was issued, 31st March following, to the sheriff of said county, and levied upon the *N. E. qr. and the N. E. qr. of the N. W. qr. of Section* 26; *and the S. E. qr. of the N. W. qr. and the N. W. qr. of the N. W. qr. of Section* 25, *in Town.* 14 *N. R.* 5 *W.*, with other lands, as the property of Kinman, which were sold 4th September, 1854, and purchased by David S. Fraley, to whom the sheriff executed a deed therefor on the 6th of September, 1854, which, on that day, was acknowledged in Court, and filed for registration on the 25th June, 1855, in the office of the Recorder of said county.

That the sale was fraudulent and void in equity, because the lands were purchased with the means, and for the benefit of Kinman, the defendant in the execution, and that the deed was taken in the name of Fraley, who held the lands after the sale for the use of Kinman, to prevent them from being sold to satisfy other judgments outstanding against him, etc.

That afterwards, on the 30th January, 1855, Kinman being

indebted to Moses Greenwood & Co. of New Orleans, sold the lands to them, in extinguishment of the debt, and for an additional consideration in money, and Fraley and wife executed a deed to them. That the deed recited a consideration of $1400, as paid to Fraley, which was untrue, the entire consideration having passed to Kinman, for whose benefit Fraley held and conveyed the lands, etc.

That on the 21st March, 1854, William and John Park obtained a judgment against Kinman, in the Independence Circuit Court; upon which, on the first of April following, an execution was issued to the sheriff of said county, levied upon the lands above described, with others, as the property of Kinman; which were sold on the 4th of September, 1854, and purchased by complainant, Miller; to whom, on the 28th March, 1855, the sheriff executed a deed for the lands; which, on the same day, was acknowledged in Court, and on the 16th of May, following, filed for registration in the office of the Recorder of the county, etc.

That Greenwood & Co., were present by their agent, when complainants purchased the land at sheriff's sale, and consequently knew when they purchased them of Kinman, through Fraley, that they were perpetrating a fraud on the rights of complainant.

Complainant submits that the purchase made by Kinman, through Fraley, of his own lands, at the sheriff's sale, under the execution in favor of *Goff*, for fraudulent purposes, did not divest or pass any title whatever, and that consequently complainant, by his purchase, acquired a full and perfect title to the lands, free from all claims that could be made by Fraley, and Greenwood & Co., on account of the fraudulent purchase as set forth above, etc.

The bill prays that the deed from the sheriff to Fraley, and the deed from Fraley and wife to Greenwood & Co., be declared null and void; and that the title to the lands be vested in complainant, free from incumbrance on account of the fraudulent transactions, perpetrated by the defendants, as set forth in the bill, etc.

Kinman did not answer the bill—Greenwood & Co., and Fraley answered.

The substance of so much of the answer of Greenwood & Co., as is material to be stated, is as follows:

They admit that Fraley and wife, by deed in fee, with special warranty against claims or incumbrances derived through or suffered by them, executed, acknowledged and filed for registration, on the 29th, but bearing date the 30th of January, 1855, conveyed to the respondents the lands described in the bill.

That respondents, on the 25th September, 1854, obtained judgment against Kinman, in the Independence Circuit Court, for $1118 22 debt and damages, which sum, with interest to the 29th January, 1855, being due to respondents, besides $8 50 costs, Kinman, on being applied to for payment or settlement of the judgment, an execution being previously issued thereon, and being in the hands of the sheriff, proposed to George C. Adams, the agent of respondents, to procure to be conveyed to them the lands in question for the sum of $1400 00, of which sum said judgment should compose a part, and the residue should be paid to Kinman. That Kinman told Adams, the agent, and Mr. Fairchild, the attorney of respondents, who had obtained, and was then controlling the judgment for their benefit, that the lands were held by Fraley, but that he (Kinman,) could procure a conveyance of them to be made to respondents, if their debt against him was thereby paid.

That after due reflection upon the proposition, it being considered by Adams, upon whom, as between him and the attorney of respondents, was thrown the responsibility of accepting or rejecting the proposition, it was concluded that it should be accepted, if Fraley would so convey, and if the attorney should, upon examination of the title to the lands, declare it to be good.

That Kinman declared the title to the lands to be perfect; and Fraley, on being applied to, declared his willingness to convey the lands to respondents, if it could be done in satisfaction of their judgment against Kinman, although he stated that he was under no obligation so to do, having bought them in for

himself, and without any promise to hold them in trust for Kinman, or any one whatever.

That, in the examination of the title, the attorney of respondents became satisfied that the title to the lands had been absoly invested in Kinman, by purchase from Wm. H. Bateman, who had held them by full unencumbered title; that they had been sold under execution issued upon the judgment in favor of Goff, as alleged in the bill, and purchased by Fraley. That although several judgments and executions had been obtained, and issued against Kinman, the proceedings under which Fraley's title was derived, were the oldest judgment and the first execution.

Respondents were informed and believed that their said attorney had no knowledge or suspicion that the lands were claimed at that time by any other than Fraley under his purchase; and they allege that there was nothing on record that could apprise their attorney of the existence of complainant's claim, because his deed was not executed until the 28th of March thereafter, nor filed in the Recorder's office until the 16th May, 1855.

That their attorney went to the Recorder's office, and examined the record of conveyances, relating to said lands, and could find no record of any claim thereto, conflicting with the title of Fraley; and was told by the Recorder, in answer to special questions put to him by the attorney, that no deed or conveyance affecting said lands was on file in the office that had not been recorded.

From all which circumstances, and from being entirely ignorant that complainant had any claim to said lands, or that they had ever been sold under any execution other than the one under which Fraley purchased them, and that the sale to him was under the oldest judgment and execution that had been rendered and issued against Kinman, the attorney supposed the title to the lands that was proposed to be conveyed to the respondent to be good, and so thinking, proposed and obtained the execution of the conveyance from Fraley and wife to re-

spondents, etc., a copy of which was made an exhibit to the bill, etc.

Respondents then acquitted Kinman from their said judgment, and immediately passed over to him the amount which the price allowed for the lands exceeded the judgment; except that by agreemeut between Kinman and Adams, eight per cent. interest was allowed respondents, instead of six, the former being the usual rate of interest, and legal when stipulated for, upon contracts made in New Orleans, where Kinman contracted the debt with respondents, upon which their judgment was obtained, etc., etc., and except the further sum of $10 for taxes paid upon the lands for the year 1854, by the attorney of respondents, which were unpaid, and which Kinman allowed to be charged to him in the settlement.

That the whole of the purchase money, and the whole consideration passed from respondents to Kinman, and by the consent of Fraley, in whom appeared to be the legal title, before the sheriff's deed was made to complainant, and before the agent and attorney of respondents had any information or suspicion of his claim. And the attorney had no thought or suspicion from the special warranty given by Fraley, that the title to the lands was not good, but considered it right and reasonable for Fraley to warrant against his own acts and incumbrances only.

Respondents say that the foregoing facts are stated upon information derived from their agents in the settlement of the matter; that they themselves had no thought that any claim would or could be set up to said lands in opposition to their title, so derived, until after the commencement of this suit.

That the judgment and execution, under which Fraley bought the lands, were older than those under which complainant purchased: that the sale to Fraley was made prior to that to complainant, and that the deed to Fraley was executed 26th September, 1854, and the deed from him to respondents, 29th January, 1855, and both were at once, after their execution, filed in the Recorder's office, while the deed to complainant was not

made until the 28th March, and not filed for record until the 16th May, 1855.

Respondents insist that the sale to complainant was void, because after the lands had been sold under a prior execution and older judgment, they could not again be sold so as to confer any title to any body; and that in attempting to make such sale the sheriff exceeded his power and duty, and complainant had no right to bid, and obtained no title in buying.

" And these respondents claim the full benefit of purchasers " of the said lands in good faith, and for a valuable considera- " tion, which was their whole worth and more, without notice " of any fraud, adverse claim, or incumbrance, and after not " being able to find any, after diligent examination of their " attorney, and having made full payment and received full " deed thereto, before notice of the claim of Miller."

Respondents also insist that complainant's purchase was void, because the lands in dispute, and others, were sold together, and not by separate tracts, etc.

The answer also contains a demurrer to the bill, etc.

Upon the final hearing the bill was dismissed for want of equity, and Miller appealed.

It appears from the proof in the cause, that Kinman was insolvent; that there were a number of judgments against him, and that the judgment in favor of Goff, under which Fraley purchased the lands, was the oldest, and that under which the appellant purchased was the next oldest.

There can be no doubt from the answer of Fraley, and the depositions read on the hearing, but that he purchased the lands at the request, and with the means furnished by Kinman, upon an agreement to hold them for his use and benefit. Though, by the sale, purchase, and conveyance of the sheriff, Fraley obtained the legal title to the lands, yet in consequence of the arrangement between Kinman and him, his title was fraudulent and void as against the creditors of Kinman, and in equity, he held the lands as a trustee for their benefit. The title was worthless in his hands as against any creditor of Kinman, or

any person purchasing under the judgment of a creditor; and the title conveyed by him to Greenwood & Co., was equally worthless and void, if they purchased with notiċe of the fraud; and this is the principal question in the cause: did they purchase the lands with notice of the fraudulent arrangement between Kinman and Fraley, or were they bona fide purchasers for a valuable consideration, without notice of the fraud, etc.

And, *first*, it is to be determined .whether the answer of Greenwood & Co., sufficiently sets up this defence.

The bill charges the fraud, and states the facts which constitute the fraud, but does not expressly allege that Greenwood & Co., had notice of the fraud when they purchased the lands of Fraley. But it is well settled that a party claiming protection as a bona fide purchaser, or mortgagee, from the fraudulent grantee of real estate, must deny notice of the fraud although notice thereof is not charged in the complainant's bill. *Manhattan Co. vs. Evertson*, 6 *Paige*, 457; *Gallatian vs. Cunningham*, 8 *Cow.* 361; *Brace vs. Duchess of Marlborough*, 2 *Peer Will.* 495; *Moore vs. Clay*, 7 *Ala.* 742; *Denning vs. Smith*, 3 *Johns. Ch. R.* 345; *Wilson vs. Hillyer et al.* 1 *Saxton*, 63; *Jenkins vs. Bodley, et al.* 1 *Sm. & M. Ch. R.* 343. He must deny notice positively and not evasively, and he must even deny fully and in the most precise terms, every circumstance charged in the bill from which notice could be inferred. *Ib.*; 2 *H. & W. Lead. Cas. Eq. R.* 85.

If the agent or attorney of Greenwood & Co., who made the purchase for them, had notice of the fraud, it was notice to them. *Willard's Eq. Juris.* 608.

The answer of Greenwood & Co. should have positively denied notice of the fraud down to the time of paying the consideration and receiving the deed, etc. *Byers et al. vs. Fowler et al.* 7, *Eng.* 286.

It may be seen by an examination of the answer, which is above substantially set out, that notice of the fraud is, in no portion of the answer, positively denied.

It is true that in one paragraph of the answer, which we

have copied literally, the pleader states that "respondents *claim the full benefit* of purchasers, etc., without notice of any fraud," but this is no such positive denial of notice of the fraud, at the time they purchased the lands, etc., as is required by the well established rule of pleading in such cases.

The answer of McDonald, in the case of *Byers et al. vs. Fowler ct al.*, which was held to be insufficient, is fuller and more explicit and pointed in its denial of notice of the fraud than the one now before us.

If Greenwood & Co., or thcir agent, or attorney, had in fact no notice of the fraudulent arrangement between Kinman and Fraley, when they purchased the land of Fraley, paid the purchase money and took the deed from him, it would have been an easy and simple matter for them to have denied it in the explicit and positive manner required by the well established and familiar rule on the subject.

But it is insisted by the counsel for appellees that it is too late, after replication to the answer, to object that its denial of notice is insufficient; and that, notwithstanding the defective answer, the appellees are entitled to the full benefit of any proof upon the hearing that they purchased in good faith, without notice, etc.; and it is pressed upon the Court that its decision on this point, in *Byers et al. vs. Fowler et al.*, is erroneous, and should be overruled. Through respect for the learning of the eminent counsel (Mr. Fairchild), insisting upon a review of that case, we have carefully examined the authorities upon which it rests, and considered the arguments urged against its correctness, and have concluded not to disturb it.

Want of notice of the unregistered deed, or of fraud, etc., may be interposed as a defence by plea or by answer.

If done by a defective plea, the complainant may set the plea down for argument, which has the effect of a demurrer, and take the judgment of the Court upon its sufficiency. But if the complainant reply to the plea, all objections to its sufficiency, whether of form or substance, are thereby waived; and if the matter alleged in the plea be proven upon the hearing,

no matter how defective a defence it may be, the defendant is entitled to a decree, etc. *Peay, Rec'r, vs. Duncan et al.,* 20 *Ark.*

But this rule does not apply to a defective defence set up by answer.

An answer performs two offices: it responds to the discovery sought by the bill, and sets up matters of defence. If the responses of the answer to the discovery sought by the bill be imperfect or unsatisfactory, the complainant may except; but there is no such thing as excepting to such portion of the answer as alleges matter of defence. Matter of defence is for the benefit of the defendant, and not the complainant, and is intended to bar the relief sought by the bill. If insufficient, or defectively alleged, the complainant is not required, by any rule of chancery practice, to except for the purpose of compelling the defendant to put in a better defence. Nor is a demurrer to an answer allowed. The consequence is, that the matter of defence relied on by the defendant, must be stated at his peril, and if insufficient, he cannot make a better defence by proof upon the hearing than he has made in his answer. *Gallatian et al. vs. Cunningham,* 8 *Cow.* 361.

It is true, as suggested by the counsel for the appellees, if the complainant deem the defence set up by the answer insufficient, he may set the cause down for hearing upon bill and answer, without replication, which operates, in effect, as a demurrer to the answer; but this the complainant can rarely do, on account of the denials, usually contained in the answer, of matters charged in the bill, material to the complainant's recovery.

It follows that the answer of appellees (Greenwood & Co.), containing no direct and positive denial of notice of the fraud, the appellant was not bound to prove notice, and any proof made by the appellees, on the point, was of no avail; as held in *Byers et al. vs. Fowler et al.*

In *Servis vs. Bealy,* 32 *Miss.* (3 *George*) 88, Mr. Chief Justice Smith makes a remark that would seem to militate against the

soundness of *Byers et al. vs. Fowler et al.;* but the point being a matter of practice merely, it is better that it should remain settled as it is, than to disturb it, even if there were more than one adjudication against it.    There are many questions of more importance, upon which the American cases are not in harmony.

It is very fully stated in the answer of Greenwood & Co., and sufficiently proven by the depositions read upon the hearing, that their agent and attorney purchased the lands of Kinman, and took a conveyance from Fraley, without actual notice that appellant had previously purchased the lands under execution against Kinman.    It is true, also, that, at the time the agent, etc., of Greenwood & Co. purchased the lands, the sheriff's deed to appellant had not been executed, and, of course, not filed for registration.

But this does not help the title of Greenwood & Co.    The purchase of Fraley being void for fraud, and appellant having purchased the lands under a judgment, constituting a lien upon the lands next in priority to that under which Fraley purchased, his title was valid as against Fraley, and also as against Greenwood & Co., who, for want of any sufficient denial thereof, must be held to have purchased with knowledge of the fraud which vitiated the title of their vendor.    Under such circumstances, if appellant had purchased the lands, under the judgment, after Greenwood & Co. bought them of Kinman, his title would have been good, even if he had purchased with full knowledge that they had previously bought them.

It is submitted in the answer of Greenwood & Co., that the lands having been sold under the oldest judgment—that in favor of *Goff,* under which Fraley purchased—the second sale, under the judgment in favor of the Parks, and under which appellant purchased, was void, and conferred no title, etc.

*Judge Bevins* testifies that he had control of the execution in favor of the Parks, and having satisfied himself, from observing the conduct of Kinman and Fraley, that the purchase of the lands

by the latter, under the execution in favor of Goff, was fraudulent, the lands were again put up and sold by the sheriff, at his instance, under the execution in favor of the Parks, and purchased by appellant.

In the case of *Byers & McDonald vs. Fowler et al.*, the lands were first sold under an execution against Tully, and bought by Grollman upon a fraudulent agreement to hold them for the benefit of Tully. McDonald purchased of Grollman. After which the lands were sold under a junior judgment against Tully, and purchased by Fowler & Denton, who filed a bill to cancel McDonald's title, etc.; and their purchase held to be valid—McDonald losing the lands for the want of a sufficient denial, in his answer, of notice of the fraud between Tully and Grollman.

Fraley having purchased the lands with Kinman's means, and for his benefit, the lands remained, in legal contemplation, the property of Kinman, and subject to be sold for the satisfaction of the demands of his creditors. We cannot, therefore, hold the title of the appellant void, upon the mere allegation in the answer, that he purchased at a second sale of the lands.

It is also submitted in the answer of Greenwood & Co., that the title of appellant was void, because the lands were sold together, and not by separate tracts.

This the Statute authorizes, upon the consent of the defendant in the execution, (*Digest, chap.* 68, *sec.* 54), which, it appears from the return of the sheriff in this case, was given.

If, by such sale, the lands were sacrificed to the injury of creditors, whether such consent would make the sale legal and valid, we need not decide in this case, the allegations of the answer on the subject being too meagre, and there being no fraud or unfairness attributed to the appellant in connection with the sale.

We have not overlooked the fact that the return of the sheriff shows that appellant purchased the lands at a price

which must have been grossly inadequate; but this fact is not noticed in the answer, nor are there any allegations showing that any fraudulent conduct of the appellant, or of the sheriff superinduced him, produced such result in the sale; and mere inadequacy of price, in the absence of fraud, does not, it is well settled, vitiate the sale.

Other questions have been discussed by counsel, which the view we have taken of the main question in the cause, renders it unnecessary for us to notice.

The decree of the Court below, dismissing the bill for want of.equity, must be reversed, and the cause remanded, with instructions to the Court to reinstate the bill for further proceedings.


Absent, Mr. Justice RECTOR.