## Miller vs. Fraley and Greenwood & Co.

The discretionary power of the court to allow amended or supplemental answers to be filed, unless abused or exercised in violation of established rules, is not the subject of review.

Whether the receipt upon a judgment and the entry of satisfaction upon the execution thereon, be a valuable consideration for land, or not, the payment of over two hundred dollars in money, in addition to such receipt and satisfaction, would be a valuable consideration; and equity will not enquire whether it is an adequate consideration; at least, in favor of one who had purchased at a merely nominal price.

The court can find no adjudged case nor is it laid down in the text books, that a purchaser must hold under a general warranty deed to entitle him to protection as an innocent purchaser without notice; but it is no doubt the law that where a person bargains for and takes a mere quit claim deed, or deed without warranty, it is a circumstance, if unexplained, to show that he had notice of imperfections in the vendor's title, etc.

The bill charged that K., a judgment debtor, made a fraudulent arrangement with F., by which the latter purchased the lands of the former, with his money, at execution sale, and held them for his use and benefit, to prevent the lands from being sold to satisfy other judgments against him, and that the defendants, subsequent purchasers of F., had notice of the fraudulent arrangement; which was positively denied by the answer; *Held:*

1. That in the absence of allegation and proof, as to the possession of the land, the presumption, if indulged in, is that possession was with the legal title.

2. That to make the insolvency of the judgment debtor a circumstance from which to infer notice of the fraud, it was necessary to prove that the defendants had notice of the insolvency at the time of the purchase.

3. That though the acceptance of a special warranty deed may be a circumstance from which to infer notice, it is liable to explanation—as that the defendant's attorney, upon examination of the title, believed that a good legal title might be made to his clients—the payment of a fair price, etc.

4. That the facts, that the negotiation for the purchase of the land was made by K., the judgment debtor, and the entire consideration paid to him, and the deed executed by F., are strong circumstances from which to infer notice of the fraudulent arrangement between the parties; but the force of these circumstances is overcome by the positive denials of the answer and the uncontradicted testimony of the attorney, etc.

*Appeal from Independence Circuit Court in Chancery.*

Hon. WILLIAM R. CAIN, Circuit Judge.

ROSE, for appellant.

FAIRCHILD, for appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

When this case was here before, it went off on the insufficiency of the answer of Greenwood & Co., to entitle them to the defence of innocent purchasers without notice, etc. See 21 *Ark.* 22.

On the remanding of the cause, Greenwood & Co. offered to file an amended answer, fully denying all notice of fraud, etc., supported by the affidavit of their attorney, who purchased the lands in controversy for them, stating that he prepared the original answer, and that it was his intention and effort so to frame it, as well and legally to claim and have for them the benefit of the defence of innocent purchasers, etc. They also offered to submit the cause upon the depositions, etc., already taken and on file. The court permitted the amended answer to be filed, a replication thereto was entered, the cause heard, and the bill dismissed for want of equity. Miller appealed.

It is assigned for error that the court permitted the amended answer to be filed, but the point is not insisted on in the argument of counsel. The discretionary power of the court to allow amended or supplemental answers to be filed, unless

abused, or exercised in violation of established rules, is not the subject of review. *Dig. ch.* 28, *sec.* 54; *Story Eq. Pl. sec.* 896, *and note from Mitford—also sec.* 902.

It is submitted that appellees were not purchasers for a *valuable consideration:* that they did not buy with money or other things of value, but took the lands in payment of a debt.

The bill alleges that Kinman being indebted to Greenwood & Co., in order to extinguish said debt, or in consideration of a sum of money, and his indebtedness, sold, or attempted to sell the lands to them.

It appears from the answer and depositions, that previous to the purchase of the lands by appellees, they had obtained a judgment against Kinman for over eleven hundred dollars, upon which an execution had issued and was in the hands of the sheriff at the time of the purchase. That they gave $1400 for the lands, by receipting the judgment, causing the execution to be returned satisfied, and paying the balance in money.

In *Padgett vs. Lawrence,* 10 *Paige* 180; CHANCELLOR WALWORTH said: "As a general rule, a purchaser of the legal title, who receives his conveyance merely in consideration of a prior indebtedness, is not entitled to protection" [as an innocent purchaser for a valuable consideration] "because he has lost nothing by the purchase. But the relinquishment of a valid security which he before held for his debt, and which cannot be revived so as to place him in the same situation substantially as to security, as he was in prior to his purchase, may of itself be sufficient to entitle him to protection as a bona fide purchaser."

If this be law, to say nothing of the receipt of the judgment and the return of the execution satisfied, the appellees were nevertheless purchasers for a *valuable consideration* by the pay- of over two hundred dollars in money. *Merrit vs. Northern Railroad Company,* 12 *Barb. Sup. C. Rep.* 609; *Love vs. Taylor,* 24 *Miss.* 574. And the consideration being valuable, equity will not enquire whether it be adequate. 2 *Hare & Wal. Notes Lead. Ca. Eq.* 45, 60. But if equity would make such enquiry, the objection that the money paid for the lands by ap-

47

pellees was an inadequate consideration, could not well be made for the appellant, who paid but *two dollars and a half* for the same lands and others.

It is also insisted that the appellees cannot claim protection as innocent purchasers, because they took from Fraley a deed with special and not general covenants of warranty. In other words, it is asserted to be law: that a vendee must claim under a general warranty deed to entitle him to the defence of innocent purchaser.

The deed in question is in the usual form of an absolute conveyance in fee, with a special warranty against any claim made or suffered by the vendor.

In *Flagg vs. Mann et al.*, 2 *Sumner*, 560, JUDGE STORY said: "This leads me, in the next place, to the consideration, whether Fuller's title, *being by a mere deed of release*, is such a conveyance as entitles him to the benefit of the plea of a *bona fide* purchaser without notice. This is a point upon which I have felt very great difficulty; and it was suggested at the argument, as matter of grave consideration. If the language of the deed had been, that Mann merely released to Fuller all his right, title and interest in the premises, there might perhaps, have been more difficulty to found the defence; for then it might, *under some circumstances*, be construed to convey no more than Mann could rightfully convey, and that the purchaser should take at his peril, subject to all the rights and equities of third persons in the premises. But, here, the language of the deed is, that Mann, in consideration of $40,000 does remise, release, and forever quit claim unto the said Elisha Fuller, his heirs and asssigns, one undivided half of a certain tract of land, etc., to have and to hold unto Fuller, so that neither Mann nor his heirs, nor any other person claiming from or under him, shall have, claim, or demand any right or title to the premises. If this deed were to be construed as a mere release, the objection taken to it at the bar would be well founded; that, as the releasee was not in possession, it was a void conveyance. But we all know that this is a common mode of conveyance in

OF THE STATE OF ARKANSAS. · 739

TERM, 1861.]        Miller vs. Fraley and Greenwood & Co.

Massachusetts; and that, where it is for a valuable consideration, *ut res magis valeat quam pereat*, a deed of release has been construed to be a bargain and sale, or other lawful conveyance by which the estate might pass * * * * And indeed it is but an expansion of the principle laid down in *Sheppard's Touchstone p.* 82, 'that a deed, that is intended and made for one purpose, may enure to another : for if it will not take effect that way, that is intended, it may take effect another way.'

"I am not aware that a purchase by way of mere release, like the present, has ever been set up in England in a case of this sort. The researches of counsel have not discovered any such case, and I am much inclined to believe that none exists. Still, however, it is not absolutely incompatible with the nature of a release, where, by reason of a privity of estate between the parties, it operates by way of enlarging the estate of the releasee, or of passing the estate of the releasor, that it should be a sufficient foundation, if *bona fide* made, for a valuable consideration, and without notice, to support the defence. There may be a difference, where the release is to operate merely by way of extinguishment. The very plea in *Walwyn vs. Lee*, 9 *Vesey* 24, which is given in the appendix to Mr. Beame's work on Pleas in Equity, was of a conveyance by lease and release. And certainly it would have made no difference, if the lease, instead of being a contemporaneous act, had been an existing lease in privity of estate. It is true, that in *Walwyn vs. Lee*, there were covenants that the releasor was seized of a perfect, absolute and indefeasible estate in fee simple in the premises. *But I am not aware that any covenant of this sort, or any covenant of general warranty*, has ever been held necessary to entitle the purchaser to make the defence. It ordinarily affords very conclusive proof, that the purchase is of the whole estate, and not of the mere right or title of the party, whatever it may be. But if it is apparent from the whole transaction that the purchaser bought the estate under circumstances, which demonstrate that he had no suspicion of the title not being perfect, as by giving a full price for an unquestionable and unquestioned

fee simple, it seems to me that the absence of any covenants of general warranty ought not to take away from him the common protection. He has, under such circumstances, at least an equal equity with a person claiming under an outstanding and unknown trust, and if so, the legal title, combined with his equity, ought not to be disturbed.

"In the present case the release of Mann to Fuller, must, as I think, be treated as a bargain and sale, or other lawful conveyance, upon the doctrine already asserted by the Massachusetts courts, which seems to me to be founded in sound sense and solid legal reasoning. It was an effectual conveyance to pass the whole estate to Fuller, and, as far as we have any means of knowledge, the title, which actually passed, is perfect as to all persons but Flagg. It steers wide, therefore, of the doctrine in *Vattier vs. Hincle*, 7 *Peters*, 271. Flagg's title is founded upon a constructive equity, not apparent upon any of the title deeds, and being secret and unknown to Fuller, cannot be allowed to prejudice Fuller's rights."

If it were law that a vendee must hold under a deed with general covenants of warranty to entitle him to protection as an innocent purchaser, persons purchasing lands at judicial sales could never claim the benefit of such defence, for officers making such sales are not required to execute such deeds. Nor could persons holding under deeds made in the form prescribed by our statute, for the words "grant, bargain and sell," imply no covenant or warranty against incumbrances other than those done or suffered by the grantor himself. *Winston vs. Vaughan*, 22 *Ark.* 72.

We have been able to find no case in which it has been adjudged, nor is it asserted in the text books that the purchaser must hold under a general warranty deed to entitle him to protection; but it is no doubt the law that where a person bargains for and takes a mere quit claim deed, or deed without warranty, it is a circumstance, if unexplained, to show that he had notice of imperfections in the vendor's title, and only purchased such interest as the vendor might have in the property, and

that he is not entitled to protection in equity as an innocent purchaser without notice, etc. *Oliver et al. vs. Piatt*, 3 *How. U. S. R.* 410; 2 *Hare & Wal. Notes Lead. Ca. Eq.* 69. And this brings us to the question whether appellees purchased with notice of the fraudulent arrangement between Kinman and Fraley, under which the latter purchased the lands, etc.

The bill charges, in substance, that, by a fraudulent arrangement between Kinman and Fraley, the latter purchased the lands at the sale, under the Goff judgment, with the money of the former, and held them for his use and benefit, to prevent the lands from being sold to satisfy other judgments outstanding against him; and that appellees had notice of this fraudulent arrangement when they purchased the lands of Fraley. The answer positively denies all knowledge or suspicion of such fraud, etc.

It is not pretended that there is any proof that appellees, their agent or attorney, had notice of such fraudulent arrangement between Kinman and Fraley, when they purchased the lands of the latter, but it is insisted that the attorney, who completed the purchase for them had cognizance of such circumstances, leading to a knowledge of the fraud, as to put a reasonable man on inquiry, and that he and they are chargeable with notice.

The alleged circumstances are :

1. That the purchase was made of one not actually in possession of the lands.

2. That Kinman was insolvent.

3. That a deed of general warranty was taken to Fraley, and he refused to sign it.

4. That the contract for the purchase of the lands was made with Kinman, and the consideration paid to him, and the deed executed by Fraley.

1. Neither the pleadings nor the evidence show who was in the actual possession of the lands at the time they were purchased for appellees. If presumption is to be indulged, it must

be presumed that Fraley was in possession, as the legal title was in him.

2. There is no direct allegation in the bill that Kinman was insolvent. The charge is, that there were other judgments against him besides the judgment in favor of Goff, under which Fraley purchased, and that Fraley was procured to purchase and hold the lands in his name, to prevent their being sold to satisfy such other judgments. The answer admits the existence of the judgments specially referred to in the bill, but, like the bill, is silent as to the solvency of Kinman.

The judgments specially described in the pleadings are: the one in favor of Goff, under which Fraley purchased the lands, and which it appears was satisfied in part by a sale of the lands, and the remainder by other property sold to Goff's attorney by Kinman—the judgment in favor of the Parks, under which appellant purchased, and which, it appears from the receipt of their attorney, dated 7th September, 1854, was paid, except costs, three days after the execution sales, and some months before Fraley conveyed the lands to appellees—and the judgment in favor of appellees, in satisfaction of which, they purchased the lands. Mr. Byers, one of the witnesses in the cause, and the attorney of Goff, says that he controlled other judgments against Kinman, but does not state the amount of them, nor when rendered, etc. He states, however, that he considered Kinman insolvent from the time of the sale of the lands. He also says: (deposing 19th February, 1857.) "He is generally understood to be, and I deem him utterly insolvent."

Whether he was generally reputed to be insolvent in January, 1855, the time when the lands were purchased for appellees, or whether their attorney had any knowledge of his insolvency, does not appear. To give the circumstance of his insolvency any potency as a fact leading to the discovery of the fraudulent arrangement between Kinman and Fraley, in regard to the purchase of the lands at the execution sale, it should have been made to appear that the attorney of appellees, who purchased

the lands of Fraley for them, had knowledge of such insolvency.

3. The explanation given by the attorney of appellees of the fact that Fraley declined to execute a general warranty deed, and that a conveyance with special warranty was accepted, divests that fact of any satisfactory tendency to prove that the validity of the title was suspicioned, or should reasonably have been suspected, or that the purchase was merely of such interest as Fraley might have in the lands. The attorney, as will be more fully shown below, was not authorized to make the purchase unless he found the title to be good. On being informed that the deed was to come from Fraley, he found, on investigation, that a clear legal title was vested in him by his purchase at execution sale, and the conveyance of the sheriff, and that he had not incumbered the lands. Fraley declined to execute a deed with general warranty, for the reason, as stated by him, that he had derived no benefit from the lands, and was willing to convey such title only as he acquired by his purchase at sheriff's sale, warranting against incumbrances done or suffered by himself. His reason was thought satisfactory by the attorney, and he prepared the deed in form proffered by Fraley. A fair price was paid for the lands, and the attorney took them, as he states, under the belief that he was getting a good title for his clients.

4. The last and most plausible circumstance urged by the counsel for appellant, as tending to prove that the attorney of appellees purchased the lands with notice of the fraudulent character of Fraley's title, is that the negotiation for the purchase was made with Kinman, the entire consideration paid to him, and the deed executed by Fraley. This circumstance has made much impression on our minds as conducing to sustain the hypothesis assumed for appellant, and its force is only overcome by the positive denials of the answer, and the consistent and uncontradicted statement of the attorney who made the purchase, corroborated, in some of the material facts stated, by other depositions.

Greenwood & Co., resided in New Orleans, and had no personal knowledge of the transaction. Their attorney, Mr. Fairchild, resided in Batesville, obtained for them the judgment above referred to against Kinman, and caused an execution to be issued thereon, and placed in the hands of the sheriff. Mr. Adams, an agent of Greenwood & Co., being on a visit to Batesville, attending to their business, Kinman proposed to him as he had before done to Mr. Fairchild, to procure the lands in question to be conveyed to appellees, at five dollars per acre, or $1400 in satisfaction of the judgment, etc., representing that the title was good; that it was in Fraley, who had purchased the lands at execution sale, but that he could be procured to make conveyance, etc. Fraley, on being applied to, expressed his willingness to make the conveyance, if it could be done in payment of Kinman's debt to appellees, but said he was under no obligation to do so, having purchased the lands for himself, etc. Adams agreed to take the lands at the price proposed, if upon investigation by the attorney of appellees, the title should be found to be good. The attorney accordingly went to work to investigate the title. He ascertained, by an examination at the recorder's office, that Kinman had purchased the lands, by a clear title, from Bateman, that Fraley had bought them at a regular sale, under the oldest judgment against Kinman, and taken the sheriff's deed, and that there were no conflicting titles on record, or on file in the recorder's office. He had no knowledge or information that appellant had purchased the lands under the junior judgment of the Parks: nor had he any knowledge or suspicion that Fraley had purchased them with the means of Kinman, or entered into any fraudulent arrangement with him to purchase and hold them for his use and benefit. The result of his investigation was, that he believed that a title derived through Fraley, as proposed, would be good, and the purchase was consummated.

The general doctrine is, that whatever puts a party upon inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, as in the case of purchasers and credi-

OF THE STATE OF ARKANSAS. 745

Term, 1861.]        Miller vs. Fraley and Greenwood & Co.

tors, *and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding.* 4 *Kent Com.* 179. Or, as the rule has been expressed more briefly, where a man has sufficient information to lead him to a fact, he shall be deemed cognizant of it. *Dart on Vend. & Pur.* 408, *in note.*

The agreement between Kinman and Fraley, was a secret, known only to themselves, so far as we are advised from the record before us, until it was brought out by judicial means in this case. They both represented Fraley's purchase at the execution sale to have been made in good faith, and that his title was valid.

It did not necessarily follow from the fact that Kinman proposed to procure the lands to be conveyed in payment of his debt, and received the entire consideration, that Fraley had purchased them with his means and held them in secret trust for his benefit, to defraud his creditors. As is frequently the case, he might have made an arrangement with Fraley for the redemption of the lands after the sale. To be within the rule, the facts or circumstances known, should naturally and necessarily point to the fraud, and be sufficient to lead to its discovery.

It is urged that the attorney of appellees should have interrogated Kinman and Fraley—should have inquired of them how it happened that Kinman was negotiating for the sale of lands owned by Fraley, and how it was that the entire consideration was to go to Kinman.

The attorney says he held but little conversation with Fraley on the subject—that he did not depend upon his representations that his title was good, but upon an examination of the public records, etc.

If it were a presumption of law that the parties to a secret fraudulent agreement, would discover it upon mere inquiry, it might be reasonable to hold that the attorney of appellees had sufficient grounds to put him upon the inquiry; but we think the presumption would be that the parties to the fraud would

carry out the deception by denial. *Hare & Wal. Notes Lead. Cas. Eq.* 2 *vol. p.* 66–7.

The burthen of proving that appellees, or their attorney, had notice of the fraud, was upon appellant, who charged the fraud, and sought thereby to destroy the legal title of appellee to the lands. The answer prepared and sworn to by the attorney, who made the purchase for appellees, and who is shown to have no interest in the matter, denies most positively any knowledge or suspicion of the fraud, etc. He states as much in his deposition, and no witness contradicts him. How then can we say, upon principle, that he had notice. As said by Lord HARDWICK in *Heinn vs. Dood,* 2 *Atk.* 276, and repeated with approbation by JUDGE STORY, in *Flag vs. Man. et al.* 2 *Sum.* 551, there ought to be clear, undoubted notice, and suspicion of notice, though a strong suspicion, is not sufficient to justify the court in breaking in upon the legal rights of a purchaser.

Decree affirmed.

. Mr. Justice FAIRCHILD did not sit in this case. .