## BROWN *v.* NELMS.

### Opinion delivered March 23, 1908.

1.  WILL—SUFFICIENCY OF MENTION OF CHILD.—A will in which the testator provides for all of his children as a class, without expressly naming them, is a sufficient mention of his children within Kirby's Digest, § 8020, providing that when any person shall make a will and shall omit to mention the name of a child he shall be deemed to have died intestate.   (Page 383.)

2.  ADMINISTRATION—RIGHT TO SELL LANDS FOR DEBTS—LIMITATION.—In the absence of circumstances excusing the delay, seven years is the shortest period of delay which will bar the right to sell lands of a decedent for the payment of debts.   (Page 388.)

3.  SAME—TIME FOR MAKING SETTLEMENT.—Kirby's Digest, § 224, requiring executors and administrators to make final settlement of their administration within three years from the date of letters, is directory merely, and does not divest the probate court of jurisdiction to complete the administration of estates after that time and to make any necessary orders to that end for the distribution of assets of the estate.   (Page 389.)

4.  SAME—SALE OF LANDS—VALIDITY.—Errors and irregularities in the allowance of claims against estates did not vitiate a sale of lands to pay debts nor deprive the probate court of jurisdiction to order the sale of such lands.   (Page 389.)

5.  SAME—EFFECT OF DEFECTS IN ALLOWANCE OF CLAIMS.—Kirby's Digest, § 3793, providing that "all probate sales of real estate, made pursuant to proceedings not in substantial compliance with statutory provisions, shall be voidable," does not mean that defects in the allowance of claims against estates will avoid a sale of real estate.   (Page 389.)

6. SAME—VALIDITY OF SALE OF LAND.—An order of sale of a testator's land was not invalid because made at a term of the probate court subsequent to the one at which the petition was first presented. (Page 390.)

7. SAME—WHETHER NECESSARY TO REVIVE CLAIM.—Payment of claims against estates which have been allowed by the probate court may be enforced against a new administrator without revivor. (Page 390.)

8. SAME—EFFECT OF WASTE BY FORMER ADMINISTRATOR.—The fact that a former administrator had wasted assets of the estate sufficient to pay the debts did not deprive the creditors of the right to resort to the unadministered assets for the payment of their debts. (Page 390.)

9. SAME—PURCHASE AT ADMINISTRATOR'S SALE BY APPRAISER.—A purchase of land at a probate sale by one who acted as appraiser of it is voidable at the instance of the heirs, even after the sale has been confirmed. (Page 391.)

10. SUBROGATION—LIMITATION.—The right of an infant to be subrogated to a lien held by another must be exercised within the period of limitation allowed to the latter. (Page 393.)

11. PROBATE SALE—PAYMENT.—A probate sale of lands of an estate which was duly confirmed is not invalid because payment was made by credit on the probated claims of the purchasers, instead of in cash. (Page 395.)

12. HOMESTEAD—POWER OF OWNER TO DEVISE.—Const. 1874, art. 9, § 6, providing that the homestead of a decedent shall be exempt, and that the rents and profits thereof shall vest in the widow and his children during their minority, does not, so far as the children are concerned, prohibit the original owner of the homestead from disposing of it by grant or devise. (Page 395.)

13. DEED—EFFECT OF QUITCLAIM.—The fact that a deed in a chain of title was only a quitclaim did not, of itself, give notice of defects in the title or of secret equities in the grantor. (Page 398.)

14. POWER—WHEN SALE REFERABLE TO.—Where a testator in his will impowered his widow as trustee to sell property for certain purposes, but did not name her as executrix, and she undertook to sell the property individually and as executrix, but not as trustee under the will, her conveyance will be construed with reference to the power in the will, if that is necessary to give it full effect. (Page 399.)

15. APPEAL—PRESUMPTION FROM ABSENCE OF EVIDENCE.—Where the decree appealed from recites that the cause was heard upon evidence which is not brought up in the transcript, it will be presumed on appeal that the chancellor's decree was warranted by the evidence. (Page 400.)

16. BETTERMENT ACT—CONSTRUCTION.—Where an appraiser of land sold by an administrator purchased such land at the administrator's sale in good faith, and acquired and held possession thereunder, believing that he had the legal and moral right to do so, he will be held to be a *bona fide* occupant of the land within the betterment act (Kirby's Digest, § § 2754-8), entitled to recover the value of the improvements made and taxes paid by him on the land, and liable only for mesne profits which have accrued within three years next before the commencement of the suit in which they may be claimed. (Page 401.)

17. SAME—RECOVERY OF IMPROVEMENTS AGAINST INFANT OWNER.—That the owner of land recovered from a *bona fide* occupant is an infant does not prevent such occupant from recovering the value of improvements made by him. (Page 404.)

18. TRUST—REIMBURSEMENT—SETOFF.—Where an heir seeks to hold a purchaser of lands of the estate liable as a trustee, the purchaser will be entitled, in the enforcement of the trust, to recover the price paid for the land, but the heir will be entitled to setoff against the purchaser's claim for reimbursement mesne profits for the full period of the latter's occupancy, upon the principle that where the occupant has been reimbursed out of the profits of the land he can not make further claim for the same payment. (Page 405.)

Appeal from Crittenden Chancery Court; *Edward D. Robertson,* Chancellor; reversed in part.

STATEMENT BY THE COURT.

This is an appeal from a decree of the chancery court of Crittenden County which involves, so far as concerns the disposal of the case here, separate controversies between the plaintiffs below and the various defendants, though there are some questions in common to be disposed of.

Josiah F. Earle resided in Crittendon County, and owned a large body of lands situated there. He died in the year 1884, leaving surviving his widow, Louisa R., and four children, Louisa, Jerry, Ben R. and Ruth. The two children first named died intestate and without issue during the lifetime of their mother, leaving the other two, Ben R. and Ruth, as their heirs at law.

Josiah F. Earle left a last will and testament, which was duly probated and contained the following disposition of his property without otherwise mentioning the devisees: "I give

my wife one-half of all my property and one-half to my children. I authorize and direct my wife to sell all the real property and re-invest in some better county for herself and children. I direct that she control and manage and sell the same, and re-invest when she can get a fair price to satisfy her—the same as if she were sole owner. I owe but little, and wish that little paid out of my life policy."

Louisa R. Earle died intestate in the year 1891, leaving surviving her two children, Ben R. and Ruth, as her heirs at law; and during that year the said Ben R. Earle was appointed administrator of her estate and also guardian of the person and estate of his sister, Ruth. He executed separate bonds as administrator and as guardian, with John R. Chase and A. H. Ferguson as his sureties; and executed to Chase a mortgage on all his interest in lands in Crittenden County to indemnify the sureties against loss by reason of their liability as sureties on his said bonds. The mortgage was not filed for record until November 13, 1895. On January 16, 1894, the probate court revoked the letters of administration held by Ben R. Earle, and on October 15, 1894, issued letters of administration in succession to W. W. Swepston on the estate of said Louisa R. Earle, deceased. The probate court made an order directing Swepston, as administrator of the Louisa R. Earle estate, to sell, for the payment of the debts of the estate, certain lands owned by said Louisa R. Earle by inheritance from her father and her undivided half interest in certain lands devised to her by the will of Josiah F. Earle. The sale was made by the administrator on the date named in the order of court, after the lands had been appraised.

W. N. Brown, Jr., became the purchaser of one of the tracts at the sale; L. Pickett, who subsequently conveyed to Brown, became purchaser of certain other tracts; J. F. Rhodes became the purchaser of certain other tracts, and J. M. Williams as trustee for Stone & Tyler became the purchaser of other tracts. These sales were duly reported to the probate court by the administrator, and the sales were by the court confirmed, and deeds were executed to the respective purchasers pursuant to orders of the court. The undivided interest of Ben R. Earle in some of the J. F. Earle lands were sold under levee tax decrees, and pur-

chased by W. N. Brown, Jr. On February 8, 1894, Ben R. Earle executed to T. W. Paxton a deed conveying his interest in certain other tracts of the J. F. Earle lands to secure the payment of a debt of $684.26 to the Edgewood Distilling Company. This deed was executed subject to the lien of a judgment for about $300 in favor of one W. P. Conner against Ben R. Earle, rendered on October 21, 1892. S. A. Martin and E. E. Williford became sureties on a bond to stay this judgment, and on expiration of the stay execution was issued and levied on said interest of Ben R. Earle in the tracts of the J. F. Earle lands conveyed, as aforesaid, to Paxton as trustee. The lands were sold under the execution, and Martin and Williford became the purchasers for the amount of the judgment and costs. The sale was made on December 1, 1894, and on May 2, 1895, Ben R. Earle conveyed, by quitclaim deed, his interest in the lands to Martin and Williford. This deed is alleged to have been intended by the parties as a mortgage. Martin afterwards quitclaimed to Williford, and the latter conveyed the lands on January 3, 1897, to George P. Diehl for a cash consideration of $389.50. On July 22, 1897, the sheriff of the county executed to Diehl, as assignee of Martin and Williford, a deed to the lands pursuant to the execution sale. Diehl was acting for the Edgewood Distilling Company, and the title he took under the deeds to him is conceded to be for the use and benefit of that company.

On September 23, 1890, Louisa R. Earle conveyed a quarter section of the Josiah F. Earle lands to W. R. Barksdale. The deed recites that it was executed by said Louisa R. Earle in her own right and as executrix of the estate of Josiah F. Earle, and that the purchase price of the land was to be used in the purchase of a home for herself and children in Memphis, Tennessee.

In 1895 the Edgewood Distilling Company and T. W. Paxton, trustee, instituted suit in the chancery court of Crittenden County against Ben R. Earle to foreclose said trust deed executed by him to Paxton as trustee to secure the payment of indebtedness to Edgewood Distilling Company. S. A. Martin and E. E. Williford were made parties defendant, and the complaint prayed that said execution sale of the Ben R. Earle lands be cancelled on account of alleged fraud and irregularities in the sale.

On October 4, 1895, W. W. Swepston as administrator in succession of the estate of Louisa R. Earle, deceased, instituted suit in said chancery court against Ben R. Earle and the sureties on his bond as administrator of the estate of Louisa R. Earle to surcharge and falsify the accounts of Ben R. Earle as such administrator, and to recover the amount alleged to be due by him to the estate.

On August 21, 1899, C. L. Lewis, as guardian of Ruth Earle, instituted suit in said chancery court against George P. Diehl, J. M. Williams, trustee, and Stone & Tyler, for partition of the lands held by them as tenants in common. The complaint set forth the last will and testament of said Josiah F. Earle and the devise of one-half of said lands to Louisa R. Earle and the remainder of the child of the testator. It also alleged that Diehl was the owner of the Ben R. Earle fourth interest in certain tracts of said lands through the deed from Ben R. Earle to Martin & Williford. The complaint also set forth a claim of homestead rights in said lands, and prayed that the same be set apart, and that an accounting of rents and profits be had.

On November 29, 1902, Ruth Earle Nelms (*nee* Earle) instituted suit in said chancery court against the respective parties in interest, praying in her complaint the following relief:

1. That the interests of plaintiff in the several tracts of the Josiah F. Earle lands be ascertained and fixed, and her title quieted and confirmed, and all adverse claims of title cancelled, and that she have an accounting of the rents and profits, and decrees against the defendants liable, for the sums they owe on account of the rents; and also for waste committed.

2. That the amount due her from the estate of Louisa R. Earle on account of her administration of the estate of Josiah F. Earle, and of her guardianship of plaintiff as a tenant in common of the lands, be ascertained and fixed, and that plaintiff have a decree therefor against the administrator of the estate of Louisa R. Earle, and the sureties on her bond as administratrix, and the sureties on her bond as guardian, for their liabilities, and that the sums for which she might obtain decrees be declared liens superior to all other liens on all the lands of which Louisa R. Earle was the owner at the time of her death, and that such lands be sold for the payment thereof.

3. That the amounts owing plaintiff by Ben R. Earle on account of his administration of the estate of Louisa R. Earle, and on account of his administration of the estate of Josiah F. Earle, and as her guardian, and as tenant in common with her of the land, be ascertained and fixed, and that she have decrees therefor against Ben R. Earle, and the sureties on his bond as administrator, and as guardian, according to their respective liabilities, and that the amounts decreed her to be declared liens superior to all other claims and liens on the lands of Ben R. Earle.

4. That plaintiff be decreed the benefit of the mortgages made by Louisa R. Earle to John R. Chase, as trustee, and by Ben R. Earle to John R. Chase, as trustee, and that the mortgages be foreclosed for the payment of what is decreed due her.

5. That an account be taken with Swepston, and the amount he owes plaintiff be ascertained and fixed, on account of his administration of the estate of Louisa R. Earle, and his sales of the land belonging to that estate, and for rents collected belonging to plaintiff, and on the other accounts stated in the complaint, and that she have a decree against him and the sureties on his bond as administrator, and also decrees for the sums owing Ben R. Earle on the same accounts assigned her by him.

6. That an acount be taken between plaintiff and Lewis as her guardian, of his guardianship, and that the amount he is owing her be fixed, and she have a decree for the same against him and the sureties on his bond.

7. That all the sales of all the lands belonging to the estate of Louisa R. Earle, made by Sweptson as administrator (1) to L. Pickett; (2) to William N. Brown, Jr.; (3) to John F. Rhodes, and (4) to J. M. Williams, as trustee for Stone & Tyler, be set aside and cancelled, and it be ascertained what amounts of rents the several purchasers owe on account of the lands, both to plaintiff and Ben R. Earle, and that plaintiff have decrees against them, respectively, for the sums found to be due.

8. That the sale of the south half of section 17, township 5 north, range 8 east, to J. M. Williams, trustee, be set aside and cancelled on the ground that the same was the homestead

of Josiah F. Earle at his death, and was not liable to be sold during the minority of plaintiff.

9. That the mortgage by Ben R. Earle to T. W. Paxton, as trustee, be decreed void and of no effect as to plaintiff, or her liens and claims upon the lands in it, and that such mortgage, and the quitclaim deed made by Ben R. Earle to Williford and Martin, and the quitclaim deed made by Williford to George P. Diehl and the Edgewood Distilling Company, and the deed made by the sheriff to George P. Diehl, all be cancelled, and the amount of the rents received by George P. Deihl or the Edgewood Distilling Company be fixed, and that she have decrees against them therefor and for any waste committed.

10. That the sales under the decrees for the levee taxes, at which Pickett and Brown became the purchasers, and the deeds made them, respectively, by Holloway as commissioner, be all decreed void and set aside.

11. That the deed from Louisa R. Earle to William R. Barksdale be construed and its effect declared, and that it be decreed that Barksdale took no title to the lands, and that the deed be cancelled.

These four cases were, by an order of the court, consolidated and tried together. W. N. Brown, Jr., died during the pendency of the suit, and as to his interest it was revived in the name of his widow and administratrix, Ida E. Brown, and his two children.

The decree rendered by the court was in favor of the plaintiff, Ruth Earle Nelms, against the widow, administratrix and heirs of W. N. Brown, Jr., setting aside the sales of land by Swepston as administrator of the estate of Louisa R. Earle, deceased; and against the plaintiff as to the lands purchased by W. N. Brown, Jr., at levee tax sale, and also against the plaintiff as to a tract of land held by the Southwestern Improvement Association, grantee of W. N. Brown, Jr., the court holding that Josiah F. Earle had no title to that tract.

The decree was also in favor of the plaintiff against the Edgewood Distilling Company and George P. Diehl, setting aside the conveyance to them by Ben R. Earle and E. E. Williford. In all other respects the decree was against the plaintiff, dismissing the complaint for want of equity. A reference

to a master was made to state an account of the rents and profits received by W. N. Brown, Jr., and by Edgewood Distilling Company and George P. Diehl; and upon report of the master decrees were rendered in favor of the plaintiff for amounts of rents received by those parties, respectively, after giving credits for amounts to which they were found to be entitled.

The plaintiff, Ruth Earle Nelms, appealed from so much of the decree as was adverse to her claim, and the widow, administratrix and heirs of W. N. Brown, Jr., and Edgewood Distilling Company, and George P. Diehl also appealed.

*R. G. Brown* and *N. W. Norton,* for appellants Brown and Southwestern Improvement Company.

1.   Ben R. Earle was barred by the five year statute at the time suit was brought; and Ruth Earle was likewise barred in so far as she claimed through him. As a creditor of her mother's estate, and in regard to any matter of her mother's guardianship, she was barred by the statute of non-claim. 33 Ark. 658; 45 Ark. 495.

2.   Ruth Earle cannot be heard to object to the sale made by the administrator Swepston. 31 Ark. 76, 83; 19 Ark. 499; 6 Eng. 519; 12 Ark. 84; 13 Ark. 507; 25 Ark. 52; 35 Ark. 205; 38 Ark. 78; 52 Ark. 342; 70 Ark. 88. The fact that Brown and Pickett were appraisers of the land does not render the sale void as to them. There is no prohibition in the statutes against appraisers purchasing land which they have been appointed to appraise. 76 S. W. 52; 8 Ohio, 52.

*R. G. Brown* and *W. D. Wilkerson,* for appellants, on the construction of the will:

This question is raised for the first time here by appellees, which should estop them; but (1) complainant was born after the execution of the will. Her rights are fixed by Kirby's Digest, § 8019. (2) The words in § 8020, "omit to mention the name of a child, if living," cannot bear the narrow and restricted meaning contended for by appellee. A will is to be liberally construed, so as to effectuate the intention of the testator, unless contrary to public policy. Where it provides for all of the children, without naming any, it is a substantial compliance with the statute. 23 Ark. 569; 31 Ark. 145; 70 Ark. 483; 8 Johns.

44; 1 Mees. & W. 113; 100 U. S. 239; 5 L. R. A. 342 and note; 61 N. E. 596; 25 Mo. 70.

*Moore, Smith & Moore, W L. Terry* and *D. D. Terry,* for appellee Nelms; *Randolph & Randolph,* of counsel.

1. The children were not named in the will, and therefore they were entitled to the same respective shares as if no will had been made. Kirby's Digest, § 8020; 23 Ark. 569; 31 Ark. 145; 70 Ark. 483. The widow took no property disposed of by the will beyond what the law gave her as such widow. When she died, the lands she held in dower descended in accordance with the will, or, since Josiah F. Earle had died intestate as to the children not named, in accordance with the law for descent and distribution of intestate's estates. Kirby's Digest, § § 2687, 2710. At the death of Jerry W. Earle and Louisa R. Earle (Williamson), their shares vested in Ruth and Ben R. Earle, in fee. 15 Ark. 550; 69 Ark. 238; 31 Ark. 103; 52 Ark. 55; 70 Ark. 371.

2. If it be conceded that Stone & Tyler were creditors of the estate of Louisa R. Earle, with their claims probated, they are not in the position of *bona fide* purchasers for value without notice. They were parties to the proceeding of Swepston in the probate court to sell the lands belonging to Mrs. Earle's estate, and the purchases made by Williams, their trustee, may be defeated by the defects, or even in the errors of the proceeding of Swepston as administrator. 54 Ark. 239. As to validity of probate sales of real estate without notice, etc., see Freeman on Void Jud. Sales, § § 15, 16. Notice of intention to make application on the first Monday in May, 1895, to the probate court to sell land will not authorize the filing of the petition in July, 1895, nor the continuance of such petition until the October term, 1895, nor the order of sale at the April term, 1896, when there has been no continuance to that term. Freeman on Void Jud. Sales, § 7; 13 Ark. 250; Black on Tax Titles, § 61; 27 Ark. 417; 48 Ark. 151; 50 Ark. 390; Cooley on Taxation (1 Ed.), 361.

3. On the question of homestead for Ruth Nelms: see art. 9, § § 3, 4, 6, 10, Const.; Kirby's Digest, § § 3898, 3899, 3882. In the sense of the Constitution and statutes, a child, whether male or female, is a minor until 21 years of age, and the home-

stead exists, notwithstanding the head of the family to whom the homestead belonged made a will, because, in case of the death of the widow, "all of said homestead is vested in the minor children of the *testator* or intestate." It is inalienable as against minor children, and the sale by Swepston in July, 1896, was void as to Ruth Earle. 47 Ark. 445; 49 Ark. 75; 56 Ark. 567; 69 Ark. 1; 77 Ark. 186; 73 Ark. 266; *Id.* 8. At the death of Josiah F. Earle, his children were entitled to immediate entry upon that part of his land constituting his homestead, and as to the estate of inheritance neither Ben R. nor Ruth, as the surviving children, devisees or heirs at law, had a right of action as owners until the youngest, Ruth, became 21 years of age. 53 Ark. 400. They could not waive or forfeit, while minors, any right of homestead. 29 Ark. 633; 37 Ark. 316. On the question of rents and accounting, see 47 Ark. 445; 49 Ark. 76; 51 Ark. 335; 61 Ark. 271; 54 Ark. 9.

4. The court erred in dismissing the complaint and cross-complaint as to the southwest quarter section 32, township 8 north, range 6 east, on the ground that Josiah F. Earle had no title. He died seized of the lands, which was sufficient title as against all defendants in this action. Ida Erb Brown and the Southwestern Improvement Company denied in their answers the title of Ruth and Ben R. Earle, but they set up no title in themselves or any one else. No issue was therefore raised by the general denial. 73 Ark. 221; *Id.* 344; Kirby's Digest, § § 6098 (2), 6137.

5. It was error to dismiss the complaint and cross-complaint as to north one-half section 13 and northeast quarter section 14, conveyed by Louisa R. Earle to Barksdale. Perry on Trusts (1 Ed.), § § 475, 490, 499, 655; 2 Head, 221; *Id.* 239; 68 Ark. 414; 1 Caldwell, 416; 13 Pickle, 72; 134 U. S. 241; 134 U. S. 589; 77 Ark. 182; 51 Ark. 61.

6. Ruth Earle had the right to redeem from the levee tax and other tax sales. Act No. 19 of Acts 1895; 74 Ark. 572; 34 Fed. 702; 10 Pet. 1; 10 Wall. 464; 161 U. S. 334. And the chancery court has jurisdiction to grant relief against the tax titles, etc. 130 U. S. 505; 77 Ark. 575; 1 Pomeroy, Eq. Jur. § § 181, 231, 249; 41 Ark. 59; 61 Ark. 456; 52 Ark. 132; 74 Ark. 433. Ruth and Ben R. Earle, being citizens of Crittenden County,

were entitled to personal notice of the suits for levee taxes, the same being for the levee taxes of 1893 and 1894, and having been brought before the act of 1895 (Acts 1895, pp. 88-93) was passed. Acts 1893, p. 32, § 13; 59 Ark. 535; 44 Minn. 97; 50 Miss. 468; 27 Ark. 473; 189 U. S. 429. No notice was given to them. Kirby's Digest, § § 4424, 4425; 77 Ark. 477.

7. That part of the decree "quieting and confirming" the title to the west third of northeast quarter, section 32, in the Southwestern Improvement Company was erroneous. It is shown that there was a receipt given to the guardian of Ruth Earle for the amount of the levee taxes due by her, and the decree declared that her lands were redeemed. If the taxes were paid, there could have been no sale of the lands; and if the court decreed that they had been paid, there could have been no deed made under the sale reported. 77 Ark. 519; Kirby's Digest, § 7181; 59 Ark. 15.

8. Both the tracts of land decreed to Rhodes belonged to J. F. Earle in his life time, and Swepston as administrator had no authority to sell any interest in them. Lands are assets for the payment of debts only *sub modo*. The personal property must first be exhausted or at least be shown to be insufficient. That lands are not to be sold for the payment of debts where the personal property is sufficient for that purpose is clearly implied from the statute, and such a holding is in accordance with weight of authority. 63 N. Y. 438; 5 Paige, 254; 74 Ill. 134; 89 Ill. 119; 3 Munf. 514; 71 N. C. 66; 12 R. I. 156; 85 Ill. 428; 83 Ind. 353; 26 W. Va. 484; 62 Miss. 390; 1 Yerg. 285; 2 Swan, 156; 8 Baxter, 483; 4 Lea, 522; 2 Pickle, 539; 2 Tenn. Chy. 331; 3 Haywood, 299. See also Kirby's Digest, § § 24, 154-156; 53 Ark. 559; S. & H. Digest, § 157; 46 Ark. 260; 47 Ark. 222. No distribution of personal assets remaining in the hands of the administrator can be made until the probate court has established that the debts of the estate have been paid, and has ordered the administrator to make distribution. S. & H. Dig., § § 160, 161; 47 Ark. 222; 5 Ark. 468; *Id.* 608; *Id.* 629; Kirby's Digest, § § 79, 186, 187, 189; 8 Ark. 9; 49 Ark. 91; 27 Ark. 235; 30 Ark. 775; 42 Ark. 25. The mere order of sale, not based on petition by administrator for sale of lands, where no notice of intention to apply for sale was given, where no debts or claims had

been probated, and where more than five years had elapsed since administration should have been closed (Kirby's Digest, § 224), will not have the effect of passing title under the sale made as against the heirs at law, and especially not where the facts establish fraud practiced as against the estate and heirs, and the purchasers are shown to have paid inadequate prices, and were chargeable with knowledge or notice of facts showing that the sales should not have been made.   37 Ark. 155; 46 Ark. 373; 56 Ark. 633; 70 Ark. 185; 63 Ark. 405; 55 Ark. 562; 56 Ark. 419; 62 Ark. 439.   It is shown that all claims against Mrs. Earle's estate could have been paid out of personal assets in hand when Swepston became administrator, if the creditors had used any efforts to make collections.   Their laches will release the lands from sale.   7 Johns. Chy. 90; Buswell on Lim. & Adv. Poss., §§ 18, 19, 328, 330, 333, 387; 19 Ark. 16; 57 Ark. 583; *Id.* 142; 46 Ark. 25; 64 Ark. 345; 35 Ark. 137; 58 Ark. 580; 55 Ark. 85; 61 Ark. 527; *Id.* 575.   The sales made by Swepston being void, they could not be made valid by confirmation.   His deeds to purchasers were never approved or ratified by the probate court.   2 How. (U. S.) 25; 1 Wall. 627; 2 Wall. 609; 94 U. S. 711; Freeman on Void Jud. Sales, 146, § 44; 6 Wall. 643; Kleber's Void Jud. & Ex. Sales, §§ 442, 491; 55 Ark. 562; 66 Ark. 492; Drake on Attachments, § 89a; 74 Ark. 82.   On the question of inadequacy of price so gross as to amount to fraud, see: 19 How. 303; 4 Johns. Chy. 118; 9 How. 55, 81-83; 98 U. S. 85; 141 U. S. 471; 117 U. S. 180; 161 U. S. 334; 20 Ark. 381; *Id.* 652; 32 Ark. 391; 56 Ark. 544; 57 Ark. 352.   Brown and Pickett having agreed before becoming appraisers to attend the sale and buy the lands, and having appraised the lands at an inadequate price, of which fact Rhodes was cognizant, unquestionably the sales to each of the three should be set aside for fraud.   33 Ark. 576; *Id.* 299; *Id.* 195; 34 Ark. 72; 61 Ark. 575; 45 Ark. 505; 55 Ark. 91; 58 Ark. 84; 46 Ark. 25; 75 Ark. 41.   See also, 196 U. S. 415; 13 Ark. 507.

9. Ruth Earle is entitled to full subrogation of the Ben R. Earle mortgage to Chase, and of the Louisa R. Earle mortgage to Chase.   2 Brandt on Suretyship, § 324; Sheldon on Subrogation, § 155; 1 Jones on Mortg., §§ 726, 883a; 23 Ark. 604; 39 Ark. 577; 45 Ark. 299; 33 Ark. 658; 45 Ark. 495; 74

Ark. 520; 23 Ark. 163; 31 Ark. 392; 32 Ark. 406; 32 Ark. 443. For distinction between mortgage to secure liability and one made to indemnity surety against loss: 108 U. S. 263; 76 Ark. 176; 34 Ark. 280; 67 Ark. 200; 92 U. S. 306.

10. Swepston, as administrator *de bonis non,* had nothing to do with the property of Louisa R. Earle which had been lost, wasted, etc., by Ben R. Earle, administrator, and no right to sue on his, Earle's, bond as administrator. 34 Ark. 144; 109 U. S. 258.

11. As to the jurisdiction of the chancery court to make a complete settlement of Swepston's administration in the suit, and to ascertain the amount owing by him, etc., see 34 Ark. 63; 42 Ark. 186; 7 Wall. 125; 33 Ark. 575; 45 Ark. 505; 50 Ark. 217; 48 Ark. 544. From personal liability for wrongful acts and defaults as administrator, Swepston cannot protect himself by any statute of non-claim or of limitations. 18 Ark. 495; 22 Ark. 1; 46 Ark. 26.

*W. D. Wilkerson,* for appellees Stone and Tyler.

1. Mere irregularities will not avail to set aside a sale, or render the sale void, where it has been confirmed by the court. 31 Ark. 83; 19 Ark. 299; 6 Eng. 519; 12 Ark. 84; 13 Ark. 507; 25 Ark. 52; 39 Ark. 206; 52 Ark. 341; 72 Ark. 339. On the charge of fraud in the sale and participation therein by the purchasers: The proof clearly shows that the sale was *bona fide* made, that it was largely attended, that different bidders competed in the bidding; also that the land was duly appraised and, so far as Williams, trustee, is concerned, was sold for more than the appraised value, and for what was at the time a fair price. At the time the sale was ordered the administration was not closed, and the debts were not all paid; and on the removal of Ben R. Earle it was Swepston's duty to finish the administration. 42 Ark. 25.

2. After Louisa R. Earle had administered the estate, she would be liable as trustee only, and as such she would be indebted to the estate, if indebted at all, and not as executrix. Her bond to Chase was to indemnify him as security for her as executrix. 17 Ark. 533; 45 Ark. 495; 23 Ark. 163; 51 Ark. 1; 24 Am. & Eng. Enc. of L., 863; 22 Ill. 546; 42 Ark. 186.

3. The allowance of the Stone & Tyler claims against Mrs. Earle's estate had the force and effect of a judgment. If erroneously allowed, the remedy was by appeal. Even if barred by the statute of non-claim, and erroneously allowed, the allowances are not void for that reason. 35 Ark. 205. Even if there had been no appraisement, this would not render the sale void, if confirmed by the court. 38 Ark. 79.

4. Where, as in this case, the testator devises all of his lands to his wife and children, the estate being entirely solvent, and they enjoy the same for thirteen or fourteen years, and by virtue of which will they receive much more than they would by claiming homestead, in such case the election and acceptance by the widow of this provision of the will would be in lieu of homestead. The terms of the will clearly indicate an intention that the bequests are made in lien of homestead. Thompson on Homestead and Exemptions, § 544; 54 Pac. 1046; 77 N. W. 551; 12 S. W. 933; Sandels & Hill's Digest, § 2520 et seq.; 29 Ark. 418; 52 Ark. 193; 37 Vt. 419; 52 Ga. 407; 65 Miss. 495; 4 Lea (Tenn.), 674.

*W. D. Wilkerson,* for Edgewood Distilling Company and Geo. P. Diehl; *Archibald R. Watson,* of counsel.

1. There is no valid reason for attacking the execution sale under the Connor judgment. The execution of the quitclaim deed by Ben R. Earle not only served the purpose of cutting off his equity of redemption, but it was also made necessary because he had, between the time of the levy of the execution and the sale thereunder, executed a deed of trust to Paxton. That the execution sale was actually made is affirmatively shown in the testimony; moreover, the sheriff's deed, regular in form, is evidence of the fact. Kirby's Digest, § 3298.

2. Earle's quitclaim deed to Martin & Williford extinquished his liability to them. It was purely optional with him whether he should pay back the money to them and claim a reconveyance of the property, or let it stand and claim an extinguishment of the debt. Such a transaction does not create an equitable mortgage. 40 Ark. 146; 75 Ark. 551. A parol promise by Martin Williford to reconvey, if made, would be void under the statute of frauds. 37 Ark. 145; 57 Ark. 632; 56 Ark. 139; 55 Ark. 414; 13 Ark. 593.

*L. P. Berry* and *A. B. Shafer,* for W. W. Swepston *et al.*

1. A will containing the clause, "I give. my wife one-half of all my property and one-half to my children," without naming them, is a sufficient compliance with the statute to prevent intestacy as to the children. Kirby's Digest, § § 8010, 8015, 8019, 8020, 8021; 39 L. R. A. 689; (Mass.) 12 *Id.* 3, c. 7; 3 Mass. 17; 24 Mo. 311; Steele & Campbell's Ark. Dig., Wills & Test., § 4; 3 Mo. 594; 17 Mo. 411; 25 Mo. 71; 70 Ark. 483-489; 115 Am. St. Rep. 579, note; 39 Am. Dec. 740.

2. As to the power of the execution to dispose of the property under the will, see 68 Ark. 409.

McCULLOCH, J., (after stating the facts). This appeal involves separate and distinct controversies between Ruth Earle Nelms, the plaintiff below, and the several defendants, and they will be treated separately in this opinion, though there are some points in common between the various parties to the different controversies.

*Ruth Earle Nelms* v. *W. N. Brown, Jr.*

The first question presented, and one which is a common matter of concern to all the parties, is a construction of the last will and testament of Josiah F. Earle. Most of the lands purchased by Brown and Pickett at the sale by Swepston as administrator in succession to the estate of Louisa R. Earle were those inherited by Louisa R. Earle from her father; but Brown also purchased her half interest in one tract devised by the will of Josiah F. Earle.

It is contended on behalf of appellee Ruth Earle Nelms that the devises contained in the will of Josiah F. Earle were void, and that he died intestate because of the omission of the names of his children from the will.

The will purports to devise one-half of the testator's property to his wife and the other half to his children, without naming them. Is the provision for the children, as a class, a sufficient naming of them to comply with the statute concerning the execution of wills?

The statute is as follows: "Whenever a testator shall have a child born after the making of his will, either in his lifetime or after death, and shall die, leaving such child, so after born, unprovided for in any settlement, and neither provided for nor

in any way mentioned in his will, every such child shall suc-
ceed to the same portion of his father's estate, real and personal,
as would have descended or been distributed to such child
if the father had died intestate, and shall be entitled to recover
the same portion from the devisees and legatees in proportion
to and out of the parts devised or bequeathed to them by such
will." Section 8019, Kirby's Digest.

"When any person shall make his last will and testament, and
omit to mention the name of a child, if living, or the legal repre-
sensatives of such child born and living at the time of the execu-
tion of such will, every such person, so far as regards such
child, shall be deemed to have died intestate, and such child
shall be entitled to such proportion, share and dividend of the
estate, real and personal, of the testator as if he had died intes-
tate; and such child shall be entitled to recover from the de-
visees and legatees in proportion to the amount of their respec-
tive shares, and the court exercising probate jurisdiction shall
have power to decree a distribution of such estate according to
the provisions of this and the preceding sections." Section 8020,
Kirby's Digest.

This feature of the statute has not been passed upon by this
court, though it was referred to in *Bloom* v. *Strauss,* 70 Ark.
483, and the court expressly declined to decide the question. In
that case the will contained neither mention of the children's
names nor provision for them.

In the present case the will of Josiah F. Earle contains a
substantial provision for his children, naming them as a class, but
does not mention their names individually.

Reliance is expressed by counsel in the case of *Branton* v.
*Branton,* 23 Ark. 569, as sustaining the contention that making
provision in a will for children as a class is not equivalent to
naming them and does not constitute a valid testament as to the
children whose names are omitted. We do not think the case
sustains that contention, though the opinion contains *dicta* in-
dicating that that was the construction to be placed on the stat-
ute. In that case the testator bequeathed all of his property to
his wife, and made no reference in his will to his children, either
by providing for them or by mentioning them by name
or as a class. It was contended in support of the

validity of the will that the statute was intended only to provide for children whose names were accidentally omitted, either from oversight or forgetfulness, and that the terms of the will in question manifested an intention on the part of the testator to disinherit his children. The court rejected that contention, and held that the will was invalid. In disposing of the case, the court said in the opinion that the law makes compulsory provision for children, as in intestacy, unless the testator "shall express a contrary intention toward any child and its children by naming it, or them, in the will." This construction of the statute would invalidate a bequest of practically all the property of a testator to his children because of a failure to mention the names of the children, individually, in the will. We cannot believe that the lawmakers intended any such construction to be placed on the language used, and we should not attribute to them an intention to restrict the power of alienation by so technical a requirement, unless that intention plainly appears from the language used. We think it is manifest that what was intended by the statute was to declare intestacy as to children of a testator, and thus provide compulsory provisions for them, unless the testator expresses a contrary intention in the will toward the children. Such an intention may be expressed by the testator in his will by providing for them as a class without naming them separately, or by naming them without providing for them. Either method is equivalent to the other, and either the one or the other clearly excludes any intention on the part of the testator to omit his children from the testament. It would, we think, be disregarding entirely the purpose of the statute, and would be putting form over substance, to say that the names of children must be individually mentioned in a will which provides substantially for each and all of them.

A section of the Revised Statutes declares that "all general provisions, terms, phrases and expressions used in any statute shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out." Kirby's Digest, § 7792.

It is therefore our duty to construe the terms of the statute under consideration consistent with a reasonable interpretation

of the language used, so as to carry out the real intention of the Legislature.

"Wills," said Judge WALKER in *Cockrill* v. *Armstrong*, 31 Ark. 581, " are always liberally construed, and every conclusion which may be legitimately indulged in order to reach a just and equitable conclusion is not only permissible but is required. Words and sentences are to be considered and construed so as to reach the real intention and purpose of the testator. So strong is the presumption that a father would not intentionally omit to provide for all his children that, in case the name of one or more of the children is left out of the will, by statute it is held to be an unintentional oversight, and the law brings them within the provisions of the will, and makes them joint heirs in the inheritance."

The statutes of this State declare, in general terms, what was already the inherent right of mankind, that all persons of sound mind and of mature age may devise all of his or her property by last will and testament. The statute having reference to omitted children was designed to apply only to presumed intestacy, and to provide a rule whereby intestacy may be conclusively presumed. It would therefore be unreasonable to say that a testator who has made substantial provision in his last will for his children is presumed to have intended intestacy as to them because he failed to mention their names.

There is a paucity of authority on this precise question because of the dissimilarity of our statute in this particular from those of other States.

The view taken by the Missouri courts fully sustains the view we have expressed. A statute of that State concerning wills, enacted in 1815, was similar to our statute, and provided that "when any person shall make his or her last will and testament, and omit to mention the name of any child or children," etc., the testator shall be deemed to die intestate as to such child or children. In 1825 the Legislature changed the statute so as to read that "if any person shall make his or her last will and testament, and die leaving a child or children, or the descendants of any such child or children (in case of their death), not provided for in such will, although such child or children be

born after the death of the testator, every such testator, so far as regards any such child or children, or their descendants, not provided for as aforesaid, shall be deemed to die intestate."

Construing the statute last quoted above, the Supreme Court of Missouri in *Block* v. *Block,* 3 Mo. 407, held that if a testator declares in his last will that one of his children, stating the name of the child, shall take no part of his estate, that was a sufficient provision under the statute for the child, and that the testator would not be deemed to have died intestate as to such child. The court said that when the child was mentioned in the will and excluded that was a provision within the meaning of the statute.

The Legislature of Missouri subsequently changed the statute so as to read that "if any person make his last will and die leaving a child or children, or descendants of any such child or children (in case of their death) not *named nor provided for* in such will," etc., "he shall be deemed to die intestate," etc. In *Beck* v. *Metz,* 25 Mo. 70, the court had under consideration a will which, after a devise to the wife of the testator of all his property, contained the following clause: "In every other respect I leave it entirely to the will and judgment of my said wife, Catherine, how and in what manner she thinks proper to dispose of the estate, as well with reference to our child or children as with reference to the said Joseph Frederick Beck." The testator left one child surviving whose name was not mentioned in the will except in the general terms quoted above; and the court held the language quoted above *named* the child within the meaning of the statute. The court, speaking through Judge Ryland, said: "The testator expressly mentions his child—'as well with reference to our child.' They had but one, the daughter. The wife had one by a former husband; even he is named. Now, this mentioning his child and the giving the power to his wife to provide for this child by disposing of the estate according to her own judgment must be considered, within the spirit of our statute, as a naming or providing for his child. He can not be said to have omitted to mention his child. True, he did not name her by her name, but she is sufficiently designated, they having but a daughter."

In *Hockensmith* v. *Slusher,* 26 Mo. 237, the court held that

a bequest to a son-in-law, though he was not designated as such in the will, was a *naming* of the daughter of the testator within the meaning of the statute. The court said: "The statute extends only to a case of entire omission, and the mention of a child without a legacy or other provision for him is sufficient to cut him off from a distributive share of the estate; and whenever the mention of one person, by a natural association of ideas, suggests another, it may reasonably be inferred that the latter was in the mind of the testator and was not forgotten or unintentionally omitted."

The same conclusion was reached in *Woods* v. *Drake,* 135 Mo. 393, where it was held that a bequest to children, naming them by name, of an adopted daughter, without mentioning her by name, was sufficient to amount to a mention of her name.

The Supreme Court of Oregon in *Gerrish* v. *Gerrish,* 8 Ore. 351, construing a statute of the State which was copied from the Missouri statute quoted herein, followed the construction laid down by the Missouri court, and held that the mention in a will of children as a class was sufficient naming of them within the meaning of the statute.

We do not have to go as far as the Missouri courts have gone in order to sustain the will in the present case. We hold that the provision in the will of Josiah F. Earle for his children was sufficient compliance with the statute, and that all the devises contained in the will were valid.

An attack is made upon the validity of the sales of land made by Swepston as administrator in succession of the estate of Louisa R. Earle on numerous grounds, some of which are not of sufficient importance to discuss. As shown in the foregoing statement of the facts, Ben R. Earle was appointed administrator of said estate in the year 1891, and in 1894 (more than three years thereafter) his letters were revoked, and Swepston was appointed administrator in succession.

The order of sale was made by the probate court upon the petition of the administrator, and it is contended that the order was void because not made within three years from the date the administration began. It is conceded that an order of sale may be made after three years on petition of creditors, but not on petition of the administrator. We find no such distinction or

limitation in the statute. The statute provides generally that, if the personal estate of a decedent shall be insufficient to pay the debts, it shall be the duty of the executor or administrator to apply to the probate court by petition for sale of real estate to raise funds for that purpose. There is no restriction as to time, but this court has repeatedly held that, in the absence of circumstances excusing the delay, seven years is the shortest period of delay which will bar the right to sell lands of a decedent for the payment of debts. *Mayo* v. *Mayo,* 79 Ark. 570, and cases cited therein.

No distinction is made in any of those cases between the power of the probate court to order sales on petition of the executor or administrator and on petition of creditors. The statutes further provide (Kirby's Digest, § 204 *et seq.*) that any creditor may, after demand made upon the administrator and his refusal to comply, petition the probate court for sale of the decedent's lands for the payment of debts; but no time is specified within which this may be done, and no time is specified to elapse before it may be done.

Executors and administrators are required by statute to make final settlement of their administration within three years from the date of letters (Kirby's Digest, § 224) ; but this statute is only directory. It does not divest the probate court of jurisdiction to complete the administration of estates after that time and to make any necessary orders to that end for the disposition of assets of the estate.

The validity of the probate sales is also challenged on the ground that some of the claims against the estate were probated after the expiration of two years from commencement of administration. It cannot be denied that there were, when the order of sale was made by the court, valid and subsisting claims against the estate which had been duly probated within the two years prescribed by law. The record shows this. Petition was made to the probate court by the administrator in succession for sale of the lands, the order was duly made, the sales were made and reported to the court, and the court confirmed them. Errors and irregularities in the allowance of claims did not vitiate the sale or deprive the court of jurisdiction to order the sale of lands. The act of 1891 (Kirby's Digest, § 3793) providing that "all

probate sales of real estate, made pursuant to proceedings not in substantial compliance with statutory provisions, shall be voidable," whatever it may mean, does not mean that defects in the allowance of claims against estates will avoid a sale of real estate. The proceedings referred to in that statute are those pertaining to the sale, and not to the allowance of claims whenever the court has acquired jurisdiction of the *corpus* of the estate. *Jackson* v. *Gorman,* 70 Ark. 88.

The order of sale was not invalid because made at a term of the probate court subsequent to the one at which the petition was first presented. The court acquired jurisdiction to hear and determine the prayer of the petition, and jurisdiction was not lost by lapse of the term. It was not even an irregularity to grant the prayer of the petition at a subsequent term.

It is contended that, before an order of sale could be made on petition of Swepston to pay debts probated during the administration of his predecessor, Ben R. Earle, the judgments of allowance must have been revived against Swepston as administrator in succession. Payment of claims against estates, once allowed by the probate court, can be enforced without revivor against a new administrator. Notwithstanding a change in the administration, they continue, until paid, as subsisting judgments against the estate, and can be enforced, as such, without revivor. Prior to the adoption of the Constitution of 1874 which abrogated it, there was a statute authorizing issuance of execution for the enforcement of judgments against executors and administrators as such. It was held under that statute that judgment against an administrator must be revived against his successor before execution could issue against the latter. *Meredith* v. *Scallion,* 51 Ark. 361; *Adamson* v. *Cummins,* 10 Ark. 541. But, as we have already said, the provision of the Constitution of 1874 conferring upon probate courts exclusive jurisdiction over the estates of decedents (art. 7, § 34) abrogated that statute and vested in that court exclusive power to enforce claims established against estates of decedents. *Meredith* v. *Scallion, supra.*

The fact, if established, that Ben R. Earle, while acting as administrator, had wasted assets of the estate sufficient to pay the debts did not, as contended by appellee, deprive the creditors of the right to resort to the assets unadministered for the payment

of their debts, and to procure sale of the land. *Conger* v. *Cook*, 56 Iowa, 117; In re *Bingham*, 127 N. Y. 296; *Smith* v. *Brown*, 99 N. C. 377.

The principal attack upon the probate sales to Brown and Pickett is grounded upon the fact that they were appraisers of the real estate to be sold.

The statute provides that, before an executor or administrator of an estate shall sell lands, he shall cause the same to be appraised by three disinterested householders of the county, and that the appraisers, before they enter upon their duties, shall make and subscribe an affidavit "that they will well and truly, according to the best of their abilities, view and appraise the lands." Kirby's Digest, § 196, 197. The statute further provides that the lands shall be reserved from sale unless sold for two-thirds of the appraised value thereof. Kirby's Digest, § 199.

Nothing is found in the statute forbidding appraisers from becoming purchasers at the sale; and if they are prohibited by any principle of law it must result from some inconsistency in their relations as appraiser and purchaser, and not from any positive statutory inhibition. Is there any such inconsistency? They have no duty to perform concerning the sale except to appraise the property, and that duty is fully performed before the sale occurs. But it is an important duty, and one which the statute requires shall be performed by wholly disinterested persons. The disqualifying interest which the statute forbids may be either in the sale or the purchase, and one who expects to become a purchaser at the sale has such an interest. It is true that an appraiser may at the time he performs his duty harbor no intention to become a purchaser at the sale, and may therefore be entirely disinterested at that time, and may conceive the design to purchase after he completes the appraisement; but, as that design may be hidden in his own breast, how can it be shown when he conceived it? In making the appraisement he performs an important and substantial service for the protection of the estate, and we deem it to be the soundest policy to hold that when he accepts the office he disqualifies himself from becoming a purchaser. That rule works no hardship to the appraiser, and it shuts the door to opportunity for concealed fraud.

The rule which forbids one who has a duty to perform with reference to such a sale rests upon sound public policy, and not upon the actual perpetration of fraud. One of the forbidden class who purchases will not be heard to say that he intended no wrong and perpetrated no actual fraud.

The only authority which we find directly in point is a decision of the Supreme Court of Ohio, and the reasons therein stated are, we think, unanswerable:

"The disability of the appraisers in the present case, if it exists," says the court, "arises under those general principles of equity which prevent those from acquiring a title to whose discretion or agency the management of a sale is confided. The application of the doctrine to trustees, executors, attorneys, and agents is familiar in all the books. A majority of the court unite in the opinion that the principle of exclusion attaches to every person to whose integrity and judgment is committed the execution of any step needful in making the sale. Where the law creates fiduciary relations, it seeks to prevent the abuse of confidence by insuring the disinterestedness of its agents. It holds the relation of judge and party, of buyer and seller, to be inconsistent. The temptation to abuse power for selfish purposes is so great that nothing less than that incapacity is effectual, and thus a disqualification is wrought by the mere necessity of the case. Fullness of price, absence of fraud, and fairness of purchase are not sufficient to countervail this rule of policy. To give it effect, it is necessary to recognize a right in the former owner to set the sale aside in all cases on repayment of the money advanced * * * The appraiser of land is interposed between the buyer and seller in judicial sales to prevent sacrifices, at undue prices, to the detriment of those interested in its value. If he were permitted to profit by his position, the law would lose its strongest security for his integrity." *Armstrong* v. *Heirs of Huston,* 8 Ohio, 552.

It has been decided by this court that a confirmed sale of land by an administrator or executor is valid without any appraisement at all having been made (*Bell* v. *Green,* 38 Ark. 78); but the confirmation does not heal the incapacity of the purchaser. The sale is voidable at the instance of the heirs, and may be avoided after confirmation. This must ordinarily be done, of

course, within a reasonable time; but the plaintiff was an infant at the time of the sale, and she commenced this suit to set aside the sale within a reasonable time after she attained her age of majority, and she is entitled to do so as to her interest in the land which she inherited from her mother. She inherited one-half of her mother's land, and Ben R. Earle inherited the other half. She claims, and the chancery court decreed to her, a lien on the Ben R. Earle interest, by subrogation to the rights of his mortgagees, the sureties on his bond as her guardian and as administrator of the Louisa R. Earle estate, for the amount found to be due by him as such guardian and administrator.

The defendants pleaded the five-year statute of limitation under the probate (judicial) sale. Ben R. Earle, as well as the mortgagees themselves, were barred at the time of the commencement of this suit. Was Ruth Earle Nelms, the infant, also barred of her right to subrogation? We hold that she was barred.

It is said that the right of subrogation is peculiarly a doctrine of equity jurisprudence, and is founded on natural justice and the facts and circumstances of each particular case. 27 Am. & Eng. Enc. Law, p. 203; 4 Pomeroy's Equity Jurisprudence, § 1419. The doctrine is variously applied: to sureties who pay debts of their principal and may be subrogated to the securities, liens, etc., held by the creditor; to creditors who may be subrogated to securities and liens held by sureties; to persons interested in incumbered estates who pay off the incumbrances; and to persons paying or advancing money to discharge incumbrances on other's property, under an agreement that he may hold the discharged incumbrance as security for repayment. One entitled to subrogation is substituted in the place of the original holder of the right, with no greater rights or equities than he had. *Rodman* v. *Sanders,* 44 Ark. 504. "The rights acquired by a party entitled to subrogation cannot be extended beyond the rights of a party under whom subrogation is claimed. Subrogation contemplates some original privilege on the part of him to whose place substitution is claimed; and where no such privilege exists, or where it has been waived by the creditor, there is nothing on which the right can be based. While a surety who pays the debt of his principal is subrogated to the rights of the holder of the

claim, he takes such rights subject to all disqualifications and limitations which attached to them in the hands of his predecessor." 27 Am. & Eng. Enc. of Law, p. 206.

A surety who pays the debt of his principal and seeks subrogation to the securities held by the creditor, or a creditor who seeks subrogation to the lien of securities held by a surety, must take steps to enforce his right of subrogation within the period of limitation which would have barred the right of enforcement while in the hands of the original holder of the securities. There can be no subrogation to a lien, the enforcement of which is barred by limitations. *Rodman* v. *Sanders, supra;* Sheldon on Subrogation, § 176.

· The subrogated right to enforce a lien is a derivative right, and must be exercised within the period of limitation allowed to the original holder of the lien. Exceptions may take a case out of that rule, as in *Neff* v. *Elder*, 84 Ark. 277, where one who purchased land in ignorance of a defect in the title and whose money was used in paying off a valid incumbrance was held to be entitled to be subrogated to the lien on discovering the defect in his title, and that the statute did not bar his right before he discovered the defect. The plaintiff could not be subrogated to greater rights under the mortgage executed by her brother, Ben R. Earle, than the mortgagees themselves. Her minority does not enlarge her right over those possessed by those to whom she seeks to be subrogated.

The validity of the levee tax sales to · Pickett and Brown under decree of court is attacked on the alleged ground that Ben R. Earle, whose interest in the land was sold, was a resident of the county, and occupied the land, but was not personally served with process. *Van Etten* v. *Daugherty*, 83 Ark. 534. Ruth Earle Nelms also claims a lien on the land by right of subrogation. The five years' statute of limitation is pleaded as to these lands, and for the reasons already indicated we hold the statute bar to be complete.

It results from the views herein expressed, that the chancery court erred in its decree in so far as a lien in favor of Ruth Earle Nelms is declared on the interest of Ben R. Earle in the lands purchased by Pickett and Brown at the probate sale of Swepston, administrator, and to that extent must be reversed. In

all other respects the decree settling the controversies between the plaintiff and W. N. Brown, Jr., and the Southwestern Improvement Company is correct, and will be affirmed.

### Ruth Earle Nelms v. Stone & Tyler.

J. M. Williams as trustee for Stone & Tyler, who were creditors of the Louisa R. Earle estate, purchased at Swepston's sale as administrator the interest devised to Louisa R. Earle under the will of Josiah F. Earle in certain tracts of land.

The sale is attacked on all the grounds set forth in the attack on the sales to Pickett and Brown except as to the appraisement made by those parties; and in addition thereto the validity of the sale is attacked on the ground that the claim of Stone & Tyler against the estate was improperly allowed, and that Stone & Tyler paid the purchase price by crediting the same on their judgment, instead of paying the money according to orders of the court.

The allowance of the claims of Stone & Tyler against the estate can not be drawn in question collaterally in the attack on the validity of the sale by the administrator, there being valid claims duly allowed against the estate and the probate court having jurisdiction to order the sale. *Jackson v. Gorman*, 70 Ark. 88. Nor did the fact that payment was made by credit on the probated claim of the purchasers, instead of payment in money, invalidate the sale. Only creditors who were prevented from obtaining satisfaction of their probated claims on account of the excessive payment to Stone & Tyler could complain of this, and their remedy, if any, was against the administrator. The sale was reported to the probate court and duly confirmed, and it does not appear that the interests of any other creditor were prejudiced by this method of accounting for the purchase price of the land.

The lands purchased by Stone & Tyler in part constituted the homestead of Josiah F. Earle, and it is claimed that the sale of the Louisa R. Earle interest in the land was void on this account. The land, it will be noted, was not sold to pay debts of the J. F. Earle estate, but the half interest devised to Louisa R. Earle under the will was sold by her administrator.

The Constitution provides that the homestead left by a

decedent shall be exempt from sale for debts of the decedent, and that the rents and profits thereof shall vest in the widow for life and children during minority. Const. 1874, art. 9, § 3. This provision of the Constitution does not, however, prohibit the original owner of the homestead from dismembering it by grant or devise—at least, so far as his children are concerned. Whether or not he can do so in so far as it affects the homestead rights of the widow we need not decide, as that question is not involved. The homestead right of children is a transmitted or wholly derivative one, and may be cut off by grant or devise of the parent. There is some conflict, we are aware, in the authorities on this question, but the previous decisions of this court lead to the conclusion herein expressed.

The Supreme Court of Mississippi held that the provision in the exemption laws for the enjoyment by the widow of exempted property did not interfere with the husband's right to dispose of the property by will. *Turner* v. *Turner,* 30 Miss. 428. The same court in *Morton* v. *McCanless,* 68 Miss. 810, said: "The whole object of the exemption laws of 1865 was to preserve the property from creditors, and not to affect the power of the courts to deal with the property as that of the children and heirs of the exemptionist."

This court in *Merrill* v. *Harris,* 65 Ark. 357, quoted with approval the above language, and said: "Such is the view we take of it. The Mississippi law on the subject, while different from ours in some particulars, yet is so far like ours as to render the same principles applicable in all essential particulars."

In *Merrill* v. *Harris,* the question was as to the power of the probate court to order the sale of the homestead for the benefit of a minor on petition of the guardian. This court held that the language of the Constitution exempting the homestead during minority of the children did not forbid the sale of it under orders of the probate court for their benefit. Chief Justice BUNN, in the opinion, said: "The Constitution does not, in terms, seek to do more than protect from the grasp of the creditor. There is neither expressly nor by implication a restriction upon the powers of the probate court in respect to this class of the property of minors."

We think the same principle controls in the present case.

The framers of the Constitution manifestly had in mind only the exemption of the homestead from sale for debt either during the lifetime of the owner or after his death during the lifetime of his widow or minority of his children. There is no purpose manifested to restrict the power of alienation, and only by virtue of supplementary legislation is it that any restriction is placed on the right of alienation, and this reached only to the requirement that the wife must join in and acknowledge the execution of a conveyance by the husband of a homestead. Kirby's Digest, § 3901. It would be engrafting upon the constitutional provision with reference to exempt property something which the framers thereof did not intend, and which the language does not warrant, to hold that it prevented the parent from disposing of the homestead by will. The statutes of this State have ever given unlimited power of alienation by last will and testament except as to marital rights of the spouse; and it requires clear language in subsequent enactments in order to restrict the right. We do not find anything in the Constitution inconsistent with the power of alienation.

The decree of the chancellor as to Stone & Tyler is correct and will be affirmed.

*Ruth Earle Nelms* v. *John F. Rhodes.*

Rhodes purchased lands at Swepston's sale as administrator, and there is an attempt to show collusion between him and Pickett and Brown, but the chancellor found against that contention, and we think that the evidence supports the finding. The decree in favor of Rhodes will therefore be affirmed .

*Ruth Earle Nelms* v. *Edgewood Distilling Company* and *George P. Diehl.*

Ben R. Earle mortgaged his interest in certain tracts of the lands to the Edgewood Distilling Company. The same lands were afterwards sold under execution against him, and were purchased by Martin and Williford, the sureties on his stay-bond. He also conveyed the lands by quitclaim deed to Martin and Williford. Martin subsequently conveyed his interest to Williford, and Williford in turn conveyed to Diehl, who was agent for Edgewood Distilling Company. The last-mentioned

deed contained a special warranty of the grantor against any incumbrances on the land done or suffered by her.

It is shown that the deed from Ben R. Earle to Martin and Williford, though absolute in form, was executed either as security for repayment of the amount which they were required to pay for him in satisfaction of the stay bond, or under an agreement that the lands should be reconveyed to him on repayment of that amount. We need not determine whether the deed was intended to be a mortgage or conditional sale, under the doctrine announced by this court in *Hays* v. *Emerson,* 75 'Ark. 551. We dispose of this branch of the case on other grounds. It is undisputed in the evidence that Diehl and the Edgewood Distilling Company had no actual notice of the secret agreement between Ben R. Earle and Martin and Williford concerning the conveyance of the land, and no facts are shown to have been brought to their attention from which they would be chargeable with notice of that agreement. The price paid by Edgewood Distilling Company, when added to their mortgage debt, to which the land was subject, is not shown to be so grossly inadequate as to put them upon notice of any frailty in the title conveyed. The fact that a deed in the chain of title was only a quitclaim did not, of itself, give notice of defects in the title or secret equities of the grantor. *Miller* v. *Fraley,* 23 Ark. 735; *Bagley* v. *Fletcher,* 44 Ark. 153; *Chapman* v. *Sims,* 53 Miss. 154; *Moelle* v. *Sherwood,* 148 U. S. 21; *United States* v. *Cal. & Oregon Land Co.,* 148 U. S. 31.

The mortgage executed by Ben R. Earle to the sureties on his bond as administrator and guardian, to the lien of which Ruth Earle Nelms claims the right of subrogation, was not filed for record until after the execution of his deed to Martin and Williford. Therefore the title conveyed by the latter takes precedence over the mortgage.

The decree against Edgewood Distilling Company and George P. Diehl was erroneous, and must be reversed.

*Ruth Earle Nelms* v. *William R. Barksdale.*

Louisa R. Earle conveyed a quarter section of the J. F. Earle lands to Barksdale, and the plaintiff seeks to have this conveyance set aside in so far as it affects her interest in the land.

Learned counsel have not, in their brief, favored us with an assignment of the grounds of their attack upon this conveyance, but we assume that it is because the deed of conveyance does not expressly refer to the powers contained in the will of J. F. Earle, and that the grantor undertook to convey as executrix, and not as trustee under the will. The grantor, Louisa R. Earle, purports to convey in her individual right and as executrix of the will of J. F. Earle; and it recites that the purchase price is to be used in the purchase of a home for herself and her children. She was not named in the will as executrix, but the will authorized her to control the property and to sell it for re-investment or to provide a home for herself and children. It is well settled now that a conveyance containing no reference to a power should, when necessary to give full effect to the conveyance, be construed as an execution of the power. *Lanigan* v. *Sweany,* 53 Ark. 185; Martindale on Conveyancing, § 135; 1 Sugden on Powers, pp. 247, 367; 4 Kent's Com. p. 335; *Campbell* v. *Johnson,* 65 Mo. 439. The only exception is "where there is an interest and a power existing together in the same person over the same subject, and the act be done without reference to the power, it will be applied to the interest and not to the power, *unless an interest to execute the power may be found.*" Martindale on Conveyancing, § 135. This court in *Lanigan* v. *Sweany, supra,* even limited this exception by laying down the rule that if such a conveyance "would have some effect if referred to an interest, but would not have full effect without reference to a power, it should have effect by virtue of the power."

The deed in this instance shows an intention to execute the power, but the grantor made the mistake of describing herself as executrix, and not as trustee. It is manifest, from the language of the deed, that she intended to execute the power contained in the will, and the deed should be so executed.

The decree on this branch of the case should be affirmed.

*Ruth Earle Nelms* v. *W. W. Swepston* et al.

The complaint against Swepston and the sureties on his bond as administrator, and C. L. Lewis as guardian and his sureties, involves an investigation of their respective settlement

accounts filed in the probate court and the various records, papers and accounts in that court relating to the administration and guardianship.

The parties, before the trial below, entered into the following written agreement, which was filed as a part of the record in the case: "It is further agreed that the record of the administration of the estate of Louisa R. Earle, by W. W. Swepston, as administrator, remaining in the probate court of Crittenden County, including the bonds given, the inventories filed, appraisements, accounts of sales, settlements, the allowances and classification of claims against the estate, and all orders of the probate court, and as to all other matters, or any part of such record, may be read in evidence by or on behalf of either party without filing copies in this suit, and that where copies have been filed by either party of said records, or any portion of the same, such copies shall be taken to be true, subject, however, to the right of either party to produce the original in evidence, or show the copy filed to be incorrect."

The final decree recites that the cause was heard upon "the agreements of counsel on file and the several records, deed and writings therein mentioned, consisting of parts of the original records of the probate court of this county * * * and the original tax sale records of this county, which said original probate and tax sale records were brought into open court, and orders and judgments and parts thereof and extracts therefrom read orally in open court without filing copies thereof, under the agreement of counsel above mentioned," etc. No bill of exceptions appears in the record identifying and bringing upon the record the various records and documents read orally in court and upon which the chancellor based his decree. The clerk had no authority to copy into the transcript records and documents read to the chancellor at the trial, but which had not been made a part of the record in the case either by bill of exceptions or by filing copies. We are, therefore, unable to determine from the transcript whether the decree is right or wrong, as we have not before us the evidence which the chancellor had. We must, until it is shown to the contrary, assume that the decree was warranted by the evidence.

It is therefore ordered that the decree against the widow, administratrix and heirs of W. N. Brown, Jr., deceased, and the Southwestern Improvement Company, to the extent indicated in this opinion, and against the Edgewood Distilling Company and George P. Diehl, be reversed with directions to enter a decree in accordance with this opinion. In all other particulars the decree of the chancery court is affirmed.

Mr. Justice BATTLE dissents from so much of the opinion and judgment as holds that the will of Josiah F. Earle was valid as to his children without having named them, and also as holds that the devise by Josiah F. Earle of the homestead was valid. He agrees to the opinion on all other questions, and concurs in all of the judgment not affected by the questions stated above.

### ON PETITION TO MODIFY JUDGMENT.

### Opinion delivered June 15, 1908.

McCULLOCH, J. We are now asked to consider certain questions incidental to the main issues in the case which escaped our attention on the former consideration but which were briefly called to our attention in the argument.

The principal one is that as to the amount chargeable against the estate and heirs of W. N. Brown, Jr., and the Southwestern Improvement Company of the rents and profits of the lands decreed to Mrs. Nelms. The chancery court decreed an undivided half of the lands to her and the rents and profits thereof for five years before the commencement of the suit. We held that she was entitled only to an undivided one-fourth of the lands, and remanded the case with directions to enter a decree for that interest only. This necessarily calls for a change in the decree for rents, reducing it from one-half to one-fourth of the rents of the land.

Shall the decree for rents and profits be confined to a period of three years and before the commencement of the suit?

The provisions of the statute known as the betterment act (Act March 8, 1883, Kirby's Dig. secs. 2754-7) restricting the right of recovery to three years' rent are invoked; and, on the other hand, it is contended that Mrs. Nelms, on account of her minority, is not barred by this statute.

The title of the statute is "An act for the better quieting of titles," and the sections essential to a determination of the present question read as follows:

"Section 1. That if any person, believing himself to be the owner, either in law or equity, under color of title, has peaceably improved, or shall peaceably improve, any land which, upon judicial investigation, shall be decided to belong to another, the value of the improvement made as aforesaid and the amount of all taxes which may have been paid on said land by such person and those under whom he claims shall be paid by the successful party to such occupant, or the person under whom, or from whom, he entered and holds before the court rendering judgment in such proceeding shall cause possession to be delivered to such successful party.

"Sec. 2. That the court or jury trying such cause shall assess the value of such improvements in the same action in which the title to said lands is adjudicated; and on such trial the damages sustained by the owner of the lands from waste and such mesne profits as may be allowed by law shall also be assessed, and if the value of the improvements made by the occupants and the taxes paid as aforesaid shall exceed the amount of said damages and mesne profits combined, the court shall enter an order as a part of the final judgment providing that no writ shall issue for the possession of the lands in favor of the successful party until payment has been made to such occupant of the balance due him for such improvements and the taxes paid; and such amount shall be a lien on the said lands, which may be enforced by equitable proceedings at any time within three years after the date of such judgment.

"Sec 3. That in recoveries against such occupants no account for any mesne profits shall be allowed unless the same shall have accrued within three years next before the commencement of the suit in which they may be claimed."

It will be seen that none of the provisions of the statute are applicable except in favor of an occupant such as is described therein, that is to say, a "person believing himself to be the owner, either in law or equity, under color of title." The question which first engages our attention is whether or not Brown's occupancy was of the character described in the statute. He

was one of the appraisers of the property sold by the administrator and purchased it at the sale. He had knowledge, of course, of the fact which disqualified him from becoming a purchaser and which rendered his purchase voidable. We conclude, however, from the testimony in the case that he was innocent of any actual intention to defraud in the appraisement and purchase, and that the charges in this respect against him were unfounded. He manifestly purchased in good faith, believing that he had the legal and moral right to do so. This court had never before decided that being an appraiser disqualified a person from purchasing at a judicial sale of land. The question was one of grave doubt, and gave us much difficulty in solving it. We were able to find only one reported case on the question from the courts of the country—the decision referred to in our former opinion.

The statute says that the occupant who, "believing himself to be the owner, either in law or equity, under color of title, has peaceably improved or shall peaceably improve any land," etc. This means that he must be, in fact, a *bona fide* occupant, and this court, in a case decided soon after the passage of the statute, quoted with approval the following definition of the term *"bona fide* occupant"* given by Mr. Justice Washington in *Green* v. *Biddle,* 8 Wheat. 79: "He is one who not only supposes himself to be the true proprietor of the land, but who is ignorant that his title is questioned by some other person claiming a better right to it." *Fee* v. *Cowdry,* 45 Ark. 410.

This court, in defining the meaning of the words declaring in what cases the statute applied, said: "Good faith, in its moral sense, as contradistinguished from bad faith, and not in the technical sense in which it is applied to conveyance of title, as when we speak of a *bona fide* purchaser, meaning thereby a purchaser without notice, actual or constructive, is implied in the requirement that he must believe himself the true proprietor. It must be an honest belief and an ignorance that any other person claims a better right to the land." *Beard* v. *Dansby,* 48 Ark. 183.

In *Bloom* v. *Strauss,* 70 Ark. 483, the court held that a last will and testament, defective on its face, is color of title, within the meaning of the betterment act, and that a *bona fide* occupant

thereunder could claim the benefit of the statute. Mr. Justice RIDDICK, speaking for the court in that case, said: "Now, though the defect in this will appeared on its face, still its invalidity is not so obvious as must necessarily have been noticed by a person of ordinary information not skilled in the law; and Strauss, while holding under it, was holding under color of title, within the meaning of the betterment statute."

Chief Justice COCKRILL, in delivering the opinion of the court in *Shepherd* v. *Jernigan*, 51 Ark. 275, concerning the provision of this statute said: "If, however, the defendant has improved the land in good faith under the belief that he was the sole owner, he is entitled to pay for his improvements by the terms of the betterment act. Constructive notice of the title, such as is implied from the registry of the deed, is not of itself sufficient to preclude an occupant from its benefits."

The statute contemplates actual good faith in order to invoke its benefits. An occupant cannot, on the one hand, "shut his eyes, and say he believed in good faith that he had title, when he was informed that he did not have" (*White* v. *Stokes*, 67 Ark. 184); nor, on the other hand, will constructive notice of the infirmity of his title cut off his assertion of good faith and deny him the benefits of the statute.

We are of the opinion that the facts of this case bring it within the terms of the statute.

The statute has been held to apply to those under the disability of infancy as well as to adults. *Beard* v. *Dansby*, 48 Ark. 183; *Shirey* v. *Clark*, 72 Ark. 539; *Tobin* v. *Spann*, 85 Ark. 556.

In *Tobin* v. *Spann, supra,* being a suit brought to disaffirm a conveyance made during infancy and recover the land conveyed, we held that there could be no recovery of rents which accrued before disaffirmance, but that three years' rent could, under the betterment statute, be set-off against the claim of the occupant for improvements. The present case is somewhat different, as Mrs. Nelms is entitled to recover rents and profits prior to commencement of her suit.

It is contended that the statute, as far as the restriction upon recovery of rents is concerned, is a statute of limitation, and that it falls within the general statute excepting infants, while labor-

ing under that disability, from the operation of statutes of limitation. Act April 17, 1899, Kirby's Digest, § 5075.

We are of the opinion, however, that this is not a statute of limitation with which we are now dealing. It is one to adjust the equities between the owners of lands and persons who have occupied the same under color of title, believing themselves to be the owners—*bona fide* occupants. The Legislature, in the title to the act, declared it to be, "An act for the better quieting of titles." It does not purport to fix a period of limitations within which actions to recover lands or the rents and profits thereof may be brought, but it provides that one who occupies land in good faith under color of title shall be paid the value of improvements and amount of taxes paid on the lands, less three years' mesne profits. In other words, that when the occupant holds in good faith under color of title the owner can recover the land and mesne profits for three years, and the occupant can recover the value of his improvements and amount of taxes paid. This is the theory upon which the constitutionality of the act was upheld. *Fee* v. *Cowdry,* 45 Ark. 410. In the case just cited, the court said: "Upon the principle that the Legislature may interfere with the private rights for the purpose of adjusting 'the equities of the parties as near as possible according to natural justice,' the betterment laws of many States have been sustained." The Legislature could undoubtedly pass a statute of this character containing no exceptions as to infants. "That such exceptions are commendable, and evince a proper, just and humane regard for the rights and interests of a large and helpless class of landowners, cannot be controverted. But they are within the powers of the Legislature to grant or withhold, and its exercise of the power cannot be restrained or varied by the court to subserve principles of justice and humanity." *Sims* v. *Cumby,* 53 Ark. 418.

The statute applies in the present case, and the chancery court erred in allowing for rents which accrued more than three years before the commencement of the suit.

Taxes paid by the occupant and also the amount of purchase price paid for the land at the administrator's sale, together with interest thereon, should be credited to the occupant. But, inasmuch as the right of the occupant to have credit for said pur-

chase price results from the fact that the payment contributed to the assets of the estate and is not covered by or dependent upon the terms of the betterment act, mesne profits for the full period of occupancy, without restriction as to him, may be set-off against the purchaser's claim for reimbursement. This, upon the principle that where the occupant has been reimbursed out of the profits of the land he can not make further claim for the same payment.

Mrs. Nelms obtained a substantial recovery by the suit, and was entitled to decree for costs in the court below. We will not disturb the adjustment of cost made by the chancellor between her and the Brown interest, as it is not shown to be an unjust distribution of the cost.

The former judgment of this court having been set aside for the purpose of considering the petition to modify the judgment, the judgment heretofore rendered will now be re-entered, but with further directions to render a decree concerning improvements, taxes, etc., and rents in accordance with this opinion.

HILL, C. J., (dissenting). The three years in the betterment act is, in my opinion, a limitation on the right of recovery of rents to cases where it applies. Consequently, an infant may bring his suit without regard to it, under the saving provision in his favor of section 5075, Kirby's Digest. This saving of his action by reason of his infancy should be read into the limitation in the betterment act as it is read into all the other statutes of limitations.

### Opinion delivered June 1, 1908.